The opinion of the court was delivered by
Johnson, J.:
Jeffrey L. Pribble seeks review of the Court of Appeals decision to affirm his convictions on numerous drug offenses and his 42 months’ imprisonment sentence. The Court of Appeals affirmed Pribble s convictions after rejecting Pribble s claims that (1) the charges for possession of marijuana with no drug tax stamp and possession of methamphetamine with no drug tax stamp constituted only one crime, rendering the two convictions multiplici-tous; (2) the prosecutor committed reversible misconduct during his closing argument; and (3) the district court violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to enhance his sentence under the sentencing guidelines without requiring the State to prove the existence of those prior convictions to a jury beyond a reasonable doubt. This court granted Pribble s petition for review. Finding that the drug tax stamp statute contemplates only one unit of prosecution under these facts, we reverse one of those convictions and remand for resentencing.
Factual and Procedural Overview
While executing a search warrant at Pribble’s house, law enforcement officers discovered and seized drug-buy money, over *826 800 grams of marijuana, more than 14 grams of methamphetamine, and various items of drug paraphernalia. None of the drugs bore the requisite drug tax stamps. As a result, Pribble was charged with possessing marijuana, methamphetamine, paraphernalia, and drug-sale proceeds. Of particular interest here, the State also charged Pribble with two taxation offenses under K.S.A. 79-5208, to-wit: one count of possession of marijuana with no drug tax stamp and one count of possession of methamphetamine with no drug tax stamp.
Pribble testified that none of the seized drugs or paraphernalia belonged to him and offered explanations for the incriminating circumstances. Nevertheless, the jury convicted Pribble as charged. This appeal ensued.
Multiplicity
Pribble first challenges the Court of Appeals determinations that “Pribble’s convictions of possession of marijuana with no drug tax stamp and possession of methamphetamine with no drug tax stamp do not arise from the same conduct and, by statutory definition, constitute two separate offenses.” State v. Pribble, No. 108,915, 2014 WL 1193337, at *4 (Kan. App. 2014) (unpublished opinion). Those determinations led the panel to “conclude that the convictions are not multiplicitous in violation of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.” 2014 WL 1193337, at *4,
Pribble s challenge to the panel’s holding is founded on our definition of multiplicity as being “the charging of a single offense in several counts of a complaint or information.” State v. Thompson, 287 Kan. 238, 244, 200 P.3d 22 (2008); State v. Schoonover, 281 Kan. 453, 475, 133 P.3d 48 (2006). We have noted that “[t]he principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by tire Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.” Thompson, 287 Kan. at 244.

*827
Standard of Review

A K.S.A. 79-5208 violation occurs when a drug dealer distributes or possesses marijuana or controlled substances without having affixed the appropriate stamps, labels, or other indicia of having paid the tax imposed on the dealers drugs. Whether the State charged a single drug tax stamp offense in two counts of the complaint or information presents a question of law subject to unlimited review. See Schoonover, 281 Kan. at 462.

Analysis

The Court of Appeals loosely applied Schoonovers two-component test for determining whether convictions are multiplicitous. Under that rubric, a court first looks at whether the convictions arose from the same conduct, considering such factors as:
“(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.” 281 Kan. 453, Syl. ¶ 16.
If the same-conduct prong is met, the second component of the test focuses on whether the applicable statutory provisions define “two offenses or only one.” 281 Kan. 453, Syl. ¶ 15.
The panel first determined that Pribbles possession of two different drugs constituted two separate acts that would support two convictions, notwithstanding the acknowledged fact that “the charged acts occurred at the same time and location.” Pribble, 2014 WL1193337, at *3. In addition to the conceded applicability of the first two Schoonover factors (same time and same location), the remaining two factors favor a determination that the convictions arose from the same conduct. The fact that all of the drugs found at Pribble s house — at the same time and in the same place — were devoid of any affixed drug tax stamp does not support the notion that there was any intervening event between the alleged criminal acts. Likewise, the reasonable inference to be drawn from these circumstances is that the same impulse — to avoid detection and evade taxes — was the likely motivation for failing to pay the tax and affix the tax stamps to both drugs. In short, both drug tax stamp *828 convictions arose from the same conduct, i.e., a drug dealers “distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia.” K.S.A. 79-5208.
Notwithstanding the Court of Appeals’ determination that Pribbles convictions did not meet the first multiplicity requirement of separate conduct, it chose to proceed to the second step. Because Pribbles two convictions were based on violations of the same statute, K.S.A. 79-5208, the panel applied Schoonovers unit of prosecution test to determine whether the legislature intended two offenses or only one. Pribble, 2014 WL 1193337, at *4. Under this test, a court looks at “the statutory definition of the crime” to determine “what the legislature intended as the allowable unit of prosecution,” and then allows only one conviction for each identified unit of prosecution. Schoonover, 281 Kan. at 497-98.
The panel focused on portions of K.S.A. 2010 Supp. 79-5201(c), which is a subsection of the definitions provision of the act addressing the taxation of marijuana and controlled substances, K.S.A. 79-5201 et seq. That particular definition states as follows:
“(c) ‘dealer’ means any person who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana, or more than one gram of any controlled substance, or 10 or more dosage units of any controlled substance which is not sold by weight.” K.S.A. 2010 Supp. 79-5201(c).
The panel opined that, because that definitional statute “requires the State to prove a defendant possessed different amounts of marijuana versus a controlled substance such as methamphetamine, . . . the legislature clearly intended that possession of each drug without the requisite tax stamp would constitute a separate violation of the statute.” Pribble, 2014 WL 1193337, at *4. We discern that the panel read too much into the legislature s definition of a drug “dealer,” especially when the act is viewed as a whole.
Globally, the statutory provisions in play here are part of an act dealing with taxation, rather than being part of this state’s criminal code. The topic of Chapter 79 of the Kansas Statutes Annotated is designated as “Taxation,” while Article 52 of this taxation chapter deals with “Marijuana and Controlled Substances.” As noted, *829 K.S.A. 2010 Supp. 79-5201 contains definitions applicable to the taxation of marijuana and controlled substances, specifically defining “marijuana,” “controlled substance,” “dealer,” and “domestic marijuana plant.”
The next statute, K.S.A. 79-5202, imposes the tax, sets the rates of taxation, and describes the measure to be used to calculate the tax. Significantly, the provision states that “[tjhere is hereby imposed a tax upon marijuana, domestic marijuana plants and controlled substances ... at the following rates,” thereafter stating different rates of taxation for marijuana, wet domestic marijuana plants, dry domestic marijuana plants, controlled substances sold by weight, and controlled substances not sold by weight. (Emphasis added.) K.S.A. 79-5202(a)(1)-(5). That language suggests that the legislature was imposing but one tax on the drugs but calculating the amount of that tax by applying differing rates of taxation.
Continuing in that same vein, K.S.A. 79-5204(a) provides: “No dealer may possess any marijuana, domestic marijuana plant or controlled substance upon which a tax is imposed pursuant to K.S.A. 79-5202, and amendments thereto, unless the tax has been paid as evidenced by an official stamp or other indicia.” (Emphasis added.) Subsection (c) also uses the singular form of tax, to-wit:
“When a dealer purchases, acquires, transports, or imports into this state marijuana, domestic marijuana plants or controlled substances on which a tax is imposed by K.S.A. 79-5202, and amendments thereto, and if the indicia evidencing the payment of the tax have not already been affixed, the dealer shall have them permanently affixed on the marijuana, domestic marijuana plant or controlled substance immediately after receiving the substance.” (Emphasis added.) K.S.A. 79-5204(c).
Granted, in subsection (d) of that provision, the legislature used the plural form, stating that “[tjaxes imposed upon marijuana, domestic marijuana plants or controlled substances by this act are due and payable immediately upon acquisition or possession in this state by a dealer.” K.S.A. 79-5204(d). But in the very next statute, the legislature again speaks as if there is but a single tax being assessed:
“At such time as the director of taxation shall determine that a dealer has not paid the tax as provided by K.S.A. 79-5204, and amendments thereto, tire director *830 may immediately assess a tax based on personal knowledge or information available to the director of taxation; mail to the taxpayer at the taxpayers last known address or serve in person, a written notice of the amount of tax, penalties and interest; and demand its immediate payment.” (Emphasis added.) K.S.A. 2010 Supp. 79-5205(a).
Perhaps most importantly, the specific provision imposing a tax penalty and creating criminal liability does not indicate that a tax liability generated by possessing more than one type of drug at the same time and same place creates multiple offenses for die same conduct of failing to affix the requisite drug tax stamps. That statute states:
“Any dealer violating this act is subject to a penalty of 100% of the tax in addition to the tax imposed by K.S.A. 79-5202 and amendments thereto. In addition to the tax penalty imposed, a dealer distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a severity level 10 felony.” (Emphasis added.) K.S.A. 79-5208.
The statute can reasonably be read to mean that K.S.A. 79-5202 imposes a single tax, notwithstanding the differing rates that might be applied to calculate the total tax on the various taxable drugs in the dealer’s possession. Moreover, as Pribble argues, the statute provides that the failure to affix “the appropriate stamps” (plural) makes the dealer “guilty of a . . . felony” (singular), suggesting one unit of prosecution even where both marijuana stamps and controlled substances stamps are “appropriate.” Of course, another explanation for referring to the plural, “stamps,” might be the possibility that multiple stamps could be required on a single drug. See K.S.A. 79-5204(b) (“The director shall issue the stamps, labels or other indicia in denominations in multiples of $10.”). But such an explanation does not parallel K.S.A. 79-5204(a), which proscribes the possession of drugs by a dealer “unless the tax has been paid as evidenced by an official stamp or other indicia.” (Emphasis added.) In other words, the statute describing the prohibited possession of untaxed drugs does not contemplate more than one stamp being necessary to evidence the payment of the requisite tax.
Viewing all of the statutory provisions together suggests that the legislature intended to impose a tax on the marijuana or controlled substances possessed by drug dealers and to make it a crime for *831 those drag dealers to fail to evidence the payment of that drag tax with the appropriate stamps. Consequently, the clear purpose of K.S.A. 2010 Supp. 79-5201(c)’s definition of “dealer” is to differentiate between drag dealers and personal-use possessors of drags, and, thereby, clarify who is a taxpayer under the act that can be subject to tire criminal sanction of K.S.A. 79-5208. In that regard, tire legislature’s designation of more grams to be considered a marijuana dealer than that required to be a methamphetamine dealer has a basis in fact unrelated to establishing a unit of prosecution. Accordingly, we reject the proposition that K.S.A. 2010 Supp. 79-5201(c) clearly indicates a legislative intent to make the possession of two separate drugs two separate units of prosecution under K.S.A. 79-5208.
Therefore, under the facts presented in this record, we hold that Pribble s possession of both marijuana and methamphetamine, at the same time and the same location, without the appropriate drug tax stamps affixed, without any proof that the drugs were acquired at different times, constituted a single crime that should not have been charged in two counts. One count is reversed, and the matter is remanded for resentencing with one conviction for possessing drugs without a drag tax stamp.
PROSECUTORIAL MISCONDUCT
Next, Pribble contends that he was deprived of a fair trial by the prosecutor’s closing argument. He claims the prosecutor misstated the law, impermissibly commented on witnesses’ credibility, and shifted the burden of proof to the defense. Pribble’s complaints are not devoid of merit.

Standard of Review/Analytical Framework

Pribble did not object at trial to the prosecutor’s comments, but the same standard of review applies to a claim of prosecutorial error during closing argument regardless of whether the defendant raised a contemporaneous objection. See State v. Miller, 293 Kan. 535, 550, 264 P.3d 461 (2011) (noting the special preservation rale). Appellate review of a prosecutors closing argument requires a two-step analysis. First, an appellate court decides whether the *832 comments were outside the wide latitude that a prosecutor is allowed in discussing the evidence. Second, if misconduct or error is found, an appellate court must determine whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. State v. Marshall, 294 Kan. 850, 856, 281 P.3d 1112 (2012).
Prosecutors enjoy wide latitude in crafting closing arguments. See State v. Scott, 271 Kan. 103, 114, 21 P.3d 516 (citing State v. Miller, 268 Kan. 517, Syl. ¶ 4, 997 P.2d 90 [2000]), cert. denied 534 U.S. 1047 (2001). This latitude allows a prosecutor to argue reasonable inferences that may be drawn from the admitted evidence, but it does not extend so far as to permit arguing facts that are not in evidence. State v. Tahah, 293 Kan. 267, 277, 262 P.3d 1045 (2011). Likewise, “[p]rosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law.” State v. Baker, 281 Kan. 997, 1016, 135 P.3d 1098 (2006). In short, a prosecutors arguments must remain consistent with the evidence.

Analysis

We will take each challenge in order, starting with the allegation that the prosecutor misstated the law applicable to possession of the illegal drugs. The prosecutor started on track, arguing as follows:
“So what is possession? As the Judge told you, it means having joint or exclusive control over an item with knowledge of and the intent to have that control or knowingly keeping an item in some place where you have access or some measure of control over it.”
But the prosecutor stumbled in trying to fashion a scenario that adequately explained the legal principles involved. The prosecutors exemplar was as follqws:
“If I was to walk into your home and find a remote control on a couch, well, maybe Alex Martinez was over there and dropped off the remote control or maybe there was some big party, byt it’s still yours. And this marijuana is in his suitcase. There is a tag for it. It’s in his bedroom. It’s in his toilet. It is in his freezer. It is everywhere.” (Emphasis addepl.)
*833 The district court’s jury instruction, which was proper, told the jurors that the defendants control over the item had to be “with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.” To the contrary, the prosecutors hypothetical implied that possession does not require intent when it stated that a third-person’s deposit of an item in the defendant’s house without the defendant’s knowledge means that the defendant possessed the deposited item. But as a matter of law, Pribble would not “possess” an item that was dropped in his house without his knowledge. Therefore, the prosecutor’s hypothetical about Martinez’ remote control erroneously misstated the law for the jury. See State v. Bunyard, 281 Kan. 392, 406, 133 P.3d 14 (2006) (“Misstating the law is not within the wide latitude given to prosecutors in closing arguments.”).
Our finding that the prosecutor exceeded the boundaries of fair argument sends us to the second step of determining whether the error requires reversal. In recent years, tins court has looked at three factors in analyzing reversibility in prosecutorial misconduct cases, to-wit: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor’s part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. State v. Raskie, 293 Kan. 906, 914, 269 P.3d 1268 (2012).
In applying the factors, we often declare that none of them is individually controlling. See Marshall, 294 Kan. 850, Syl. ¶ 3. To aid in the determination of the first factor — whether the misconduct was gross and flagrant — we have considered whether the error was repeated, was emphasized, was in violation of a long-standing rule, was in violation of a clear and unequivocal rule, or was in violation of a rule designed to protect a constitutional right. 294 Kan. 850, Syl. ¶ 6. In analyzing whether a prosecutor’s misconduct was motivated by ill will, we have considered whether the misconduct was deliberate, repeated, or in apparent indifference to a court’s ruling. 294 Kan. 850, Syl. ¶ 7. Perhaps most importantly, we must consider the prosecutor’s challenged comments “in the context in *834 which they were made, not in isolation.” State v. Brown, 300 Kan. 542, 560, 331 P.3d 781 (2014).
The prohibition against misstating the law is certainly a longstanding, clear, and unequivocal rule. Here, tire prosecutor correctly stated the law for the jury but then inartfully tried to explain the law with an inaccurate hypothetical. In context, however, the prosecutor immediately followed the misstatement by pointing out that marijuana was everywhere in Pribbles house — in a suitcase with a tag on it, in his bedroom, in his toilet, and in his freezer. The obvious implication of the prosecutor’s observation was that the ubiquitous presence of marijuana in a person’s house belies the notion that the homeowner was unaware of its presence, which would be a statement well within the boundaries of fair argument. In other words, the prosecutor’s erroneous hypothetical had no possibility of changing the result and does not require reversal. See State v. Inkelaar, 293 Kan. 414, 431, 264 P.3d 81 (2011) (State bears burden to establish no reasonable possibility the error affected the verdict).
Pribble’s next challenge involves foe conflicts between Pribbles testimony and the testimony of foe law enforcement officers who searched the house. After telling foe jurors that they had “to determine the weight and credibility to be given foe testimony of each witness”; that they should use their “common knowledge and experience” in reviewing “any matter about which a witness has testified”; and that numerous claims made by Pribble during his testimony were simply implausible, the prosecutor made the following statement:
“Who is credible? Mr. Pribble says I don’t want anything to do with marijuana, it’s illegal. Well, that’s why he’s sitting in that chair, ladies and gentlemen. He says I don’t approve of the culture. I don’t like Bob Marley. I don’t like Rastafarian. I don’t like anything to do with that. I don’t support marijuana. I don’t believe that’s credible. And I don’t believe you, ladies and gentlemen, should believe that’s credible either.
“I don’t think those things add up, because toe know that the officers didn’t make him put that shirt on. We know the officers didn’t tell him it had smallpox. They didn’t say, hey, put this on, let’s go out and get a picture.’’ (Emphasis added.)
The significance of foe referenced shirt was that it contained a *835 message promoting marijuana use. Later, during the prosecutors rebuttal argument, he stated:
“Do not go down these rabbit holes, do not chase these red herrings. Ladies and gentlemen, the State has met its burden. It’s beyond a reasonable doubt, a reasonable doubt. I can’t disprove things that don’t happen, and the defense can’t either.” (Emphasis added.)
It is improper for a prosecutor to offer his or her personal opinion as to the credibility of a witness, including the defendant. See State v. Elnicki, 279 Kan. 47, 59-64, 105 P.3d 1222 (2005); State v. Davis, 275 Kan. 107, 121-23, 61 P.3d 701 (2003); State v. Pabst, 268 Kan. 501, 506-07, 996 P.2d 321 (2000). The reason is because “‘such comments are “unsworn, unchecked testimony, not commentary on the evidence of the case.” ’ ” State v. Peppers, 294 Kan. 377, 396, 276 P.3d 148 (2012) (quoting State v. Duong, 292 Kan. 824, 830, 257 P.3d 309 [2011]). A prosecutor, however, “may explain the legitimate factors which a juiy may consider in assessing witness credibility and may argue why the factors present in the current case should lead to a compelling inference of truthfulness.” State v. Scaife, 286 Kan. 614, Syl. ¶ 5, 186 P.3d 755 (2008); see, e.g., State v. Huerta-Alvarez, 291 Kan. 247, 262, 243 P.3d 326 (2010) (finding that prosecutors remarks in closing regarding victims credibility “were generally in the nature of reviewing what [the victim] said, asking the jury to assess the credibility of her statements, and querying the jury why she would not have made up a more convenient story if in fact she had fabricated the story at all”).
Often, the propriety of a prosecutors point in closing argument will hinge upon how the statement is phrased. For instance, the statement, “The evidence contradicts the defendant’s statement,” is acceptable, whereas, “I don’t believe the defendant’s statement is credible,” crosses the line. Here, the prosecutor stepped outside the wide latitude allowed when he gave the jury his personal opinion: “I don’t believe that’s credible. And I don’t believe you, ladies and gentlemen, should believe that’s credible either.” Likewise, the prosecutor should not have offered his opinion that “I don’t think those things add up.” The other portions of the argument asked the jury to draw reasonable inferences from the evidence and fell within the wide latitude afforded to prosecutors notwithstanding *836 the colorful language employed. See State v. Albright, 283 Kan. 418, 429-30, 153 P.3d 497 (2007) (noting that court has approved a variety of colorful analogies — such as “smoke and mirrors” — used by prosecutors during closing arguments to describe the defendants theory of the case).
Turning to the second step on the prosecutor’s erroneous statements of personal belief, we note that the prosecutor sent a mixed message, rather than just the wrong message. Before proffering his personal opinion, the prosecutor specifically told the jurors that it was their duty to determine the weight and credibility to be given to the testimony of each witness. Moreover, one would not expect the jurors to have been surprised to learn that the prosecutor did not believe the defendant’s exculpatory statements, given that the prosecutor was continuing to seek defendants conviction.
Under the third factor, the evidence of Pribbles guilt was circumstantial in nature but substantial in quantity. The jurors heard testimony from law enforcement officers regarding the marijuana, packaging materials, labels, bongs, blow torches, methamphetamine, and a possible grow room found in Pribbles.home. They saw photographs meticulously documenting tire search as well as the large quantity of evidence seized. Accordingly, when viewed as a whole, the prosecutors use of “I believe” and “I think” did not affect the verdict.
Pribbles final challenge to the State’s closing argument involves tire prosecutor’s remarks early in his rebuttal to defense counsels arguments. The defense had pointed out that law enforcement officers did not collect any fingerprint or DNA evidence during the search of Pribbles house and that the jury did not hear from numerous witnesses who could have corroborated Pribbles claim of being out of town for several weeks prior to the house search. The prosecutor responded with the following remarks:
“[Defense counsel] tells you that the officers cut corners. They didn’t get fingerprints. They didn’t get fingerprints. They didn’t collect semen off the toilet. They didn’t collect fingerprints out of the house. They didn’t do black light tests. They didn’t get the DNA off the cans. He’s right.
“And he says that beyond a reasonable doubt is the highest burden in the land. Absolutely can’t be any more. It’s also the same tiring that we’ve been doing since *837 about 1789 before we did DNA, black lights, fingerprints, et cetera, et cetera. And we’ve been getting convictions ever since.
“He says that it’s hard to prove something that didn’t happen. How do you disprove something? That’s true. It’s really hard. How do you prove a negative?
“He says the State didn’t prove anything. Well, ladies and gentlemen, the defense has the exact same ability to subpoena witnesses. And if he was at Fall River, his sister could have told us. His nephew could have told us there ivas a big party. Terry Moore could have come in and said none of this stuff was there when I left the house. Alex Martinez coidd have come in and said, yeah, I ivas at the house. And guess who we heard from. No one. Because how do I disprove something that didn’t happen? How do I disprove that he wasn’t in Fall River, he was at his house hours before the search warrant was executed, days before? Because Detective Olsen told you, yeah, I saw the pickup. I didn’t have a camera with me that day. We did this multiple times. Olsen is not hiding anything. He told you exactly what he could remember, what he saw, what he documented.
“It is my burden to prove this case, and the State has done that.” (Emphasis added.)
Pribble complains that the prosecutors statements about the defense’s ability to call witnesses shifted the burden of proof to tire defense. “Kansas courts deem it "improper for the prosecutor to attempt to shift the burden of proof to the defendant or to misstate the legal standard of the burden of proof.’ [Citations omitted.] But we grant prosecutors considerable latitude to address the weaknesses of the defense.” Duong, 292 Kan. at 832 (quoting State v. Stone, 291 Kan. 13, 18, 237 P.3d 1229 [2010]); see State v. McKinney, 272 Kan. 331, 346, 33 P.3d 234 (2001) (where jury has been properly instructed that prosecution has burden of proof, a prosecutor may argue inferences based on the balance or lack of evidence), overruled on other grounds by State v. Davis, 283 Kan. 569, 158 P.3d 317 (2007). In Peppers, this court stated:
‘When a prosecutor’s comment ‘constituted only a general question about the absence of evidence to rebut the State’s witnesses . . . and not an impermissible remark about the defendant’s failure to testify or an attempt to shift the burden of proof to the defense,’ the comment is within the wide latitude afforded to the prosecution.” 294 Kan. at 397-98.
Particularly germane here is our precedent that a prosecutor does not shift the burden of proof by pointing out the absence of evidence to support the defense argument that there are holes in the State’s case. See, e.g., State v. Williams, 299 Kan. 911, 939, *838 329 P.3d 400 (2014) (“[I]f a defendant asks the jury to draw an inference that the States evidence is not credible because the State did not call a witness to corroborate other evidence, we have held that the State can refute the inference by informing the jury that the defense has the power to subpoena witnesses, including those who would be favorable to the defense.”); Duong, 292 Kan. at 832-33 (holding prosecutors arguments questioning defendant’s failure to present evidence of misidentification did not improperly shift burden of proof because prosecutor did not call upon defense to disprove crime’s occurrence but rather pointed out that evidence supporting defense theory was thin).
Accordingly, the prosecutor did not improperly shift the burden of proof when he commented about Pribbles failure to call alibi witnesses who could have corroborated his theory of tire case, i.e., that he was out of town when the drugs came into his house. Moreover, Pribble testified at trial, so there was nothing about the statement that infringed on his right to remain silent. Furthermore, the prosecutors comment was a fair rebuttal to defense counsel’s argument that the State failed to collect certain evidence inside Pribbles home or call Moore and Martinez as alibi witnesses. In short, we find no error in this portion of the prosecutor’s closing argument.
Judicial Finding of Criminal History
For his final issue, Pribble makes the familiar, but futile, argument that the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution, pursuant to Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it imposed an increased sentence based upon his prior convictions without requiring tire State to prove the existence of the convictions to a jury beyond a reasonable doubt.
Pribble concedes that his argument was rejected in State v. Ivory, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). This court has repeatedly confirmed Ivory’s holding. See, e.g., State v. Castleberry, 301 Kan. 170, 191, 339 P.3d 795 (2014). Pribble advances no reason for this court to revisit Ivory and, thus, we decline to do so. Pribbles *839 sentence under the guidelines, determined in part by his prior convictions, was not unconstitutional.
Affirmed in part, reversed in part, and remanded with directions.
Stegall, J., not participating.
Michael J. Malone, Senior Judge, assigned. 
* * ⅝