NOT DESIGNATED FOR PUBLICATION

No. 117,566

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES M. PHILLIPS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed August 3, 2018. Affirmed in part and reversed in part.

*Sarah Ellen Johnson*, of Capital Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: James M. Phillips appeals his convictions of attempted first-degree murder, attempted second-degree murder, attempted aggravated kidnapping, criminal damage to property, fleeing or attempting to elude an officer, two counts of attempted kidnapping, and two counts of attempted aggravated robbery. These convictions arise from an attempted robbery at an AT&T cell phone store that left one woman with devastating injuries.

Phillips contends that his two convictions for attempted aggravated robbery are multiplicitous because the evidence did not show that he intended to take property from

1

each individual but rather only from the store. He also contends that the prosecutor committed reversible error in closing argument by repeatedly engaging in burden-shifting. We conclude that Phillips' two convictions for attempted aggravated robbery are multiplicitous, but we are not persuaded by his claim of prosecutorial error.

*Facts*

Shortly after Ashley Shakankary and Amanda Foos, the store manager, opened the AT&T store for the day on August 11, 2015, Phillips entered, carrying the box for a cell phone he already owned. He asked about activating a new phone. Ashley took Phillips toward the back of the store and showed him prepaid plan options.

While Ashley was discussing the options with Phillips, Julie Dombo entered the store in need of help with her text messages. Amanda began helping Julie at the main counter in the center of the store. When Ashley and Phillips returned to the center of the store, Phillips pulled out a gun, aimed it at the women, and said: "[T]his is not a joke, take me to your back room where the phones are." At trial, Ashley testified:

"Q. What's [Phillips] doing with this gun?
"A. At that moment he was just kind of waiving it back and forth at the three of us in the location."

Amanda testified:

"Q. Where exactly on your body was he pointing the gun?
"A. I mean, it was mid level. I mean, it is kind of a hard question to say, I mean, he was just pointing the gun at all of us.
"Q. So he's swinging it around making sure that he gets each one of you?
"A. Yes."

Ashley and Amanda began to comply, but Julie refused. She headed toward the front of the store, and said: "I'm not having it." Phillips warned Julie that he would shoot her if she did not comply. When Julie slipped behind a display kiosk, Phillips shot her in the arm and the torso and then fled without any cell phones. Meanwhile, Amanda and Ashley slipped out the back door and made their way to a neighboring store in the strip mall where Amanda called 911. Julie survived but spent 114 days in the hospital, lost hearing in one ear, lost part of her lung, and ultimately had to have both of her hands and feet amputated.

Phillips got into an SUV and drove off. Derby Police Officer Larry Hampton spotted Phillips and pursued him. Other officers joined in the chase. Phillips proceeded at a high rate of speed and fired three shots at the pursuing Officer Hampton. Phillips eventually lost control of the SUV and clipped a Wichita police car before running into a ditch. He attempted to run but was quickly apprehended. When interviewed at the police station, Phillips admitted all of his actions but denied that he intended to kill anyone.

Phillips was charged with attempted capital murder, attempted first-degree murder, two counts of attempted kidnapping, attempted aggravated kidnapping, two counts of attempted aggravated robbery, criminal damage to property, and fleeing or attempting to elude an officer. Phillips represented himself at trial, where the main issue in dispute was Phillips' intent. Phillips claimed he had not intended to kill either Julie or Officer Hampton.

The jury found Phillips guilty of the lesser included crime of attempted second-degree murder of Officer Hampton (as opposed to attempted capital murder) but guilty of the remaining eight charges, including the two counts of attempted aggravated robbery. The district court sentenced Phillips to 372 months in prison. Phillips' appeal brings the matter before us.

3

*Multiplicity*

Phillips claims his two convictions of attempted aggravated robbery are multiplicitous because he was attempting to steal property from the store, not from the individual store employees. This claim raises an issue of law over which we have unlimited review. *State v. Belt*, 305 Kan. 381, 407, 381 P.3d 473 (2016). Although we generally decline to address issues raised for the first time on appeal, we will address this claim of multiplicity in order to serve the ends of justice and prevent a denial of fundamental rights. *State v. Weber*, 297 Kan. 805, 809, 304 P.3d 1262 (2013).

Multiplicity is the charging of a single offense in several counts. *State v. King*, 297 Kan. 955, 970, 305 P.3d 641 (2013). Multiplicity creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. *State v. Overman*, 301 Kan. 704, 348 P.3d 516 (2015); *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006).

In resolving a multiplicity issue we must determine (1) whether the convictions arise from the same conduct and (2) whether by statutory definition there are two offenses or just one. *King*, 297 Kan. at 970.

In determining whether the convictions arose from the same conduct, we consider (1) whether the acts occurred at or near the same time, (2) whether the acts occurred at the same location, (3) whether there was a causal relationship between the acts or whether there was an intervening causal event, and (4) whether there was a fresh impulse motivating some of the conduct. *State v. Pribble*, 304 Kan. 824, Syl. ¶ 3, 375 P.3d 966 (2016).

Here, the State concedes that Phillips' conduct satisfies this first test for multiplicity. But there remains the question whether Phillips' actions constituted two separate offenses, i.e., two separate units of prosecution. The jury convicted Phillips of both charges. To resolve the second test for multiplicity, we must look at the statute and define the scope of conduct which will comprise a unit of prosecution. There can be only one conviction for each unit of prosecution. *Pribble*, 304 Kan. 824, Syl. ¶ 4.

In the context of multiple convictions for the crime of criminal threat, our Supreme Court in *King* determined that when there is a single threat communicated to multiple victims, there is still only one unit of prosecution, not multiple units of prosecution based on the number of victims. Quoting *Schoonover*, the court stated:

> "'Under this [unit of prosecution] test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution.' [Citations omitted.]" *King*, 297 Kan. at 970.

The court noted cases in which the unit of prosecution issue had been discussed, including *State v. Pham*, 281 Kan. 1227, 136 P.3d 919 (2006), which considered the unit of prosecution under our aggravated robbery statute.

Phillips was charged with attempted aggravated robbery of both Amanda and Ashley. Robbery "is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2017 Supp. 21-5420(a). A robbery becomes aggravated when committed by a person armed with a dangerous weapon or when the robber inflicts bodily harm during the robbery. K.S.A. 2017 Supp. 21-5420(b). Attempted aggravated robbery involves "an overt act toward the perpetration of [the] crime done by a person who intends to commit such crime but fails in the

5

perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2017 Supp. 21-5301(a).

In *Pham*, an aggravated robbery case, the defendant tied up six family members in one part of the house. While the family was tied up, jewelry was taken from only one room of the house. Although the property was owned by more than one person, only one person was relieved of the items by force. In finding only one unit of prosecution, the court observed: "In the absence of clear legislative intent, the rule of lenity presumes a single physical action harming multiple victims is only one offense." 281 Kan. at 1248.

But the court in *Pham* recognized that "under proper circumstances, one transaction can support more than one count of aggravated robbery." 281 Kan. at 1251. The court cited *State v. Shoemake*, 228 Kan. 572, 618 P.2d 1201 (1980), in which our Supreme Court upheld separate aggravated robbery counts arising from a robbery in a retail store. There, Shoemake drove the getaway car while Lucas entered the store to commit the armed robbery. "The manager delivered money from one cash register to Lucas who then took money by force from another store cashier at a different cash register. The manager was then forced into the store's office and more money was taken there." 228 Kan. at 573. The court determined that taking cash from two store employees who had custody over separate bundles of the store's cash in two distinct locations of the store constituted distinct crimes. The court stated:

> "Where, in the course of the robbery of a business establishment, several employees are held at gunpoint and compelled by force to deliver to the robber property in the possession or custody of the employee, a separate and distinct aggravated robbery occurs with the taking of property from each victim. In the present case, property was taken from the manager, Lee Trial, and from the cashier, Frederick Larison, both of whom were custodians of store property. The forcible taking of such property from these employees constituted separate and distinct aggravated robberies which could be charged in separate counts." 228 Kan. at 577.

6

In a recent unpublished opinion, *State v. Dale*, No. 117,162, 2018 WL 2460263, at *3 (Kan. App. 2018) (unpublished decision), *petition for rev. filed* June 28, 2018, a panel of our court upheld multiple convictions for aggravated robbery even though the defendant took the property at the same time and place. In that case, the two counts for aggravated robbery were based on separate acts of force:  (1) the defendant pushed the first victim's head between his legs and put a gun behind his ear; and (2) the defendant put a gun to the second victim's chest. Moreover, the property taken belonged separately to the individual victims. The panel found that the two counts were not multiplicitous, noting that the defendant used a gun to take property owned by each of the victims with a separate show of force against each victim. 2018 WL 2460263, at *3.

In our present case, unlike in *Shoemake*, Phillips did not attempt to take store property (in *Shoemake*, cash; in the present case, cell phones) from different employees at different locations in the store. He waived the gun in the direction of both Amanda and Ashley and said:  "[T]his is not a joke, take me to your back room where the phones are." This all took place at one time and at one location. It is apparent that he intended to take AT&T's phones from the storage room.

Unlike in *Dale*, there were not separate and distinct acts of violence directed at Amanda and Ashley—just Phillips waiving the gun in their direction. Moreover, unlike in *Dale*, there is no evidence to suggest that he expressed the intent to take the private property of either Amanda or Ashley or store property that was under their individual and separate custody and control, as opposed to AT&T's property in the back room.

The convictions for attempted aggravated robbery of Amanda and of Ashley are multiplicitous. They have the effect of punishing Phillips twice for a single criminal act in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. Accordingly, we reverse one of Phillips' attempted aggravated robbery convictions.

Because Phillips' primary crime of conviction is attempted first-degree murder, there is no need to remand to the district court for resentencing.

*Claimed Prosecutorial Error*

Phillips claims the prosecutor committed reversible error by making comments in closing argument that shifted the burden of proof to Phillips. Under *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), we use a two-step process to evaluate claims of prosecutorial error:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

Phillips' contention is based on the prosecutor, when discussing the elements of the crimes, suggesting that "[n]o one is saying otherwise." According to Phillips, the prosecutor made these remarks to suggest that Phillips had the burden of contesting elements of the crimes as opposed to the State having the burden of proving them. For

8

example, in addressing the charge for criminal damage to property occurring during the police chase, the prosecutor argued:

> "Count 8, these were the five elements. These are the five elements the State has to prove to you. If you were to look at your instructions they are going to be just about the same. This act occurred on or about the 11th day of August, 2015, Sedgwick County, Kansas. Well, no one is telling you it happened any other date, at any other place. . . . Look at these elements that are left. No one is saying it wasn't the City of Wichita Police Department vehicle. . . . No one is saying that Mr. Phillips had permission to damage the vehicle. No one is saying he did it by fire or explosion."

Also, when addressing the charge for fleeing or attempting to elude, the prosecutor stated: "Again, no one is arguing it happened any other place, any other date. No one is arguing it wasn't a motor vehicle. No one is saying this wasn't a police vehicle or that the sirens and lights weren't going off."

The prosecutor did not use this rhetorical device to fill in the gaps created by missing evidence. The State presented evidence on all these issues: that the events happened on August 11, 2015, in Sedgwick County, that the police car's sirens and lights were activated, and so on. The State did not suggest that Phillips had the burden of proving these elements. At various points the prosecutor reminded the jury that the State had the burden to prove each of the elements of the various charged crimes. The prosecutor's remarks were merely fair comment on the evidence by suggesting that these elements, for which evidence was presented, were not contested.

Besides, any potential error was entirely harmless. They did not affect the outcome of the trial. See *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). The prosecutor's remarks did not relate to the attempted murder charges against Phillips, the only charges in dispute. Phillips' sole defense related to the murder charges. He claimed he did not act with the intent to kill Julie or Officer

9

Hampton. In closing argument, he told the jury: "We're here . . . to decide . . . Count 1 and Count 2. Counts 3, 4, 5, 6, 7, 8, [and] 9, I'm guilty. You can watch the interview. It tells you that." Given this record, Phillips is hardly in a position to claim that he was prejudiced by the prosecutor's remarks.

Affirmed in part and reversed in part.