NOT DESIGNATED FOR PUBLICATION

No. 119,623

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAY D. COOK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 9, 2019. Conviction affirmed, sentence vacated, and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.

BRUNS, J.: Shay D. Cook appeals after a jury convicted him of possession of methamphetamine and acquitted him on an aggravated weapons charge. On appeal, Cook contends that the State committed prosecutorial error in closing arguments, that the district court erroneously excluded evidence at trial, that there were cumulative errors requiring reversal, and that the district court erred at sentencing because it believed it was required to impose consecutive sentences in this case as well as three other criminal cases that are not part of this appeal. For the reasons set forth in this opinion, we affirm Cook's conviction. However, we vacate his sentence and remand for resentencing.

1

On November 21, 2016, Wichita Police Officer Justin Rapp started his shift at 11 a.m. Following a briefing, Officer Rapp loaded his personal equipment into his assigned patrol vehicle, a Ford Crown Victoria. Officer Rapp checked the car to make sure everything was in working order. He also searched the backseat for contraband or other items that may have been left in the car. As part of the search, Officer Rapp picked up the seating pad on the backseat and removed it from the vehicle. After doing so, he was satisfied that nothing had been left in the car.

At 4:13 p.m., Officer Rapp pulled Cook over for a traffic violation. When he approached Cook, Officer Rapp found him to be "nervous and evasive." After running a records check, Officer Rapp placed Cook under arrest—evidently for an outstanding warrant. He then searched Cook incident to his arrest by running his hands around the outside of his waistband, checking his pockets, and checking his socks and shoes. In doing so, Officer Rapp found no contraband. Cook—whose hands were handcuffed behind his back—was placed in the back of the patrol car.

According to Officer Rapp, there had been no one in the backseat of his patrol vehicle during his shift before he arrested Cook. The officer observed Cook "fidgeting around in the seat quite a bit, moving as if he were uncomfortable or trying to make some sort of movements with his body while handcuffed in the car." As such, Officer Rapp removed Cook from the car and searched the backseat again. Although he did not find anything, Officer Rapp noticed that Cook continued "to fidget" in the backseat as he was driving him to the jail.

After arriving at the jail, Officer Rapp took Cook out of the patrol car and searched it a third time. This time, the officer found a "clear baggie containing a crystalline substance" directly underneath the seat where Cook had been sitting. Officer

Rapp searched Cook again. In doing so, he noticed that the back portion of his underwear was bunched up in the back near the waistband. This led the officer to believe that Cook had been digging down the back of his pants "in order to get that baggie, and ditch it in the backseat of my patrol vehicle."

After Officer Rapp left Cook at the jail for booking, he "heard kind of a metal clanging sound coming from the backseat" as he was driving. He searched the car yet again and found a set of metal brass knuckles. The brass knuckles were located in the "area from behind the back rest of the backseat." Officer Rapp said there was a gap in the back rest that provided a place for people to hide things.

Although Officer Rapp wore a body camera, it was turned on and off periodically throughout his encounter with Cook. Moreover, neither the baggie nor the brass knuckles were submitted for fingerprint or DNA testing. Officer Rapp suggested that this was unnecessary because he "did not believe there was any place they could have come from, other than Mr. Cook." However, the Sedgwick County Regional Forensic Science Center confirmed that the crystalline substance found in the baggie was methamphetamine weighing 1.24 grams.

The State charged Cook with possession of methamphetamine and an aggravated weapons violation by a convicted felon. Cook's case was tried to a jury on October 4, 2017. At trial, the State presented the testimony of two witnesses and introduced two exhibits into evidence. Cook did not present any evidence. After deliberation, the jury found Cook guilty of possession of methamphetamine but acquitted him of the aggravated weapons charge.

The district court sentenced Cook in this case at the same time it sentenced him in three additional criminal cases—Sedgwick County Case Nos. 16 CR 15, 16 CR 492, and 17 CR 1772. After denying Cook's request for a departure from the presumptive sentence

3

of imprisonment, the district court sentenced him to concurrent sentences in Case No. 16 CR 15 and Case No. 16 CR 492 for a controlling sentence of 27 months in prison. The court then imposed a consecutive sentence of 19 months in Case No. 17 CR 1772. Finally, the district court sentenced Cook to serve 30 months in the instant case to be served consecutive to the sentences in the other three cases for a total controlling sentence of 76 months.

In sentencing Cook, the district court announced, "[T]here is a special rule that states the imposition of consecutive treatment of the cases. So I am following that special rule." The district court specifically mentioned Special Rule No. 10—concerning a crime committed while on felony bond—and Special Rule No. 26—concerning a defendant's third or subsequent felony drug possession conviction. Thereafter, Cook filed a notice of appeal.

ANALYSIS

*Prosecutorial Error*

Cook asserts that the prosecutor made comments during the rebuttal portion of closing arguments that constituted prosecutorial error. Specifically, Cook argues that the State committed prosecutorial error in two ways. First, he claims that the prosecutor impermissibly vouched for Officer Rapp's credibility. Second, he claims that the prosecutor argued facts not in evidence regarding the failure to obtain fingerprint or DNA evidence from the items found in the backseat of Officer Rapp's patrol car.

We use a two-step process to evaluate claims of prosecutorial error. We first examine the record for error. If we find that there was error, we then must determine whether the error was prejudicial to the defendant. *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 6, 7, 8, 378 P.3d 1060 (2016). Under the first step, we analyze whether the prosecutor's

4

comments fell outside the wide latitude allowed to prosecutors when discussing the evidence. Under the second step, we focus on whether the error prejudiced the defendant's rights to a fair trial. If a due process violation occurred, we assess prejudice by applying the constitutional error standard. See *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Furthermore, we must keep in mind that prosecutorial error is harmless if the State proves beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. See *State v. Kleypas*, 305 Kan. 224, 316, 382 P.3d 373 (2016).

During closing argument, defense counsel focused on the fact that the State's case was based on Officer Rapp's word without corroborating evidence. Counsel questioned whether the officer made "a mistake" while searching the car at the beginning of his shift. Defense counsel also pointed out that the jurors—not the arresting officer—are the ones who have the responsibility of determining if someone is guilty. Defense counsel also pointed out that Officer Rapp's body camera did not record much of the encounter, that the police did not submit the baggie or brass knuckles for DNA or fingerprint testing, and that the officer did not find any contraband when he patted Cook down. Ultimately, defense counsel suggested that the jurors should ask themselves why there was not any corroborating evidence offered to support Office Rapp's version of the events.

In response, the State began its rebuttal argument as follows:

"Ladies and gentlemen, the instructions tell you, you get to determine the weight and credit given to the evidence. That includes the weight and credit given to evidence presented by Officer Rapp. Ask yourself, 'What motive does he have to lie?'

"'What motive does he have to plant drugs or to plant brass knuckles or to make any type of allegations against Shay Cook?' I submit to you, you have no evidence that he has any motive to lie, whatsoever.

"And think about it, ladies and gentlemen, if he was out here to lie about Shay Cook to get Shay Cook in trouble, would he tell you that he missed the drugs on the first

5

search of Shay Cook? Would he tell you that he missed the brass knuckles on the first search of Shay Cook? Is that reasonable?

"Or is him telling you, 'I did a pat-down search of Shay Cook and I didn't find the drugs and I didn't find the brass knuckles,' does that lead to his credibility?

"He's telling you, 'I missed them.' 'Yes, this is a search for my safety, and I missed them.'"

The prosecutor continued:

"[Officer Rapp] missed it. If he was here to concoct some sort of story against Shay Cook to send him away, would he admit that [he missed the items]? I submit to you that when you use your common sense and personal experience, that you find that Officer Rapp has no motive to make anything up in this case."

We recognize that it is improper for the prosecutor in closing argument to express his or her personal opinion on the credibility of a witness. *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015). However, a review of the record in this case reveals that the prosecutor was specifically responding to defense counsel's argument and was focusing on the evidence in an attempt to show *why* the jurors should find the officer's testimony to be credible. The purpose of not allowing a prosecutor to comment on the credibility of a witness is that "expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000). Here, we do not find that the prosecutor was offering a personal opinion.

The fundamental purpose of a prosecutor's closing argument is to attempt to link the evidence presented to the elements that the State must prove to support a conviction. As such, it is within the proper scope of the prosecution's closing argument to discuss the evidence that supports the various elements of the State's claim and to show the jurors why they should give weight to that evidence. See *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). "The latitude given to the State includes 'explaining to juries what

6

they should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses.'" *Sprague*, 303 Kan. at 428-29. The prosecutor may explain to the jury what it should look for in assessing witness credibility. *State v. Huerta-Alvarez*, 291 Kan. 247, 262, 243 P.3d 326 (2010).

In support of his argument, Cook cites *State v. Ramey*, 50 Kan. App. 2d 82, 92, 322 P.3d 404 (2014). In *Ramey*, the prosecutor asked rhetorical questions about the theory of defense during closing argument and concluded by stating: "'Come on, that's insulting.'" In that case, a panel of this court found the remark to constitute error because the prosecutor was personally expressing his opinion that the theory of defense was insulting. 50 Kan. App. 2d at 93. Here, we find nothing in the record to establish that the prosecutor was rendering an improper personal opinion or inappropriately remarking about Cook's theory of defense.

It is also important to note that a prosecutor's comments must be viewed in context of the entire closing arguments rather than in isolation. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010). As indicated above, the prosecutor made the argument in question in response to the arguments made by defense counsel. Moreover, the prosecutor asked the jurors to use their common sense and personal experience in determining Officer Rapp's credibility. When viewed in context, we do not find that the prosecutor impermissibly vouched for Officer Rapp's credibility.

Next, Cook argues that the prosecutor argued facts not in evidence when she suggested that no fingerprint or DNA evidence could have been found on the baggie or brass knuckles. We note that in closing argument, defense counsel argued that the State should have submitted the baggie and the brass knuckles for analysis to link the evidence to Cook. In response, the prosecutor argued during rebuttal: "Look at these items. Look at the surface of this item and tell me where there is a single surface that could catch a fingerprint."

7

The prosecutor continued:

"Look at this baggie and the surface of this baggie. And consider: Can you really even get fingerprints off this bumpy type of plastic baggie surface? Is that something you would expect, of your personal knowledge and experience?"

In *State v. Anderson*, 294 Kan. 450, Syl. ¶ 4, 276 P.3d 200 (2012), the court stated:

"In closing argument, a prosecutor may comment on admitted evidence as long as the remarks accurately reflect the evidence, accurately state the law, and are not intended to inflame the jury's passions or prejudices or divert the jury from its duty to decide the case based on the evidence and controlling law."

However, it is improper argument for a prosecutor to comment on facts not introduced as evidence. See *State v. Stimec*, 297 Kan. 126, 128, 298 P.3d 354 (2013).

During Cook's trial, it was undisputed that Officer Rapp did not submit the baggie containing methamphetamine or the brass knuckles for fingerprint or DNA testing. Hence, even if the prosecutor's argument went beyond the evidence presented in suggesting that fingerprint analysis would not have been possible, we do not find that the remarks prejudiced Cook's right to a fair trial. As we previously noted, prosecutorial error is harmless if there is no reasonable possibility it contributed to the verdict. *Sherman*, 305 Kan. at 109.

In considering the record as a whole, we find the evidence of Cook's guilt on the possession of methamphetamine charge to be substantial and compelling. Officer Rapp testified that he searched the patrol car prior to Cook's arrest and found no contraband or other items. The officer also testified that he noticed Cook squirming and fidgeting in the backseat to the extent that it prompted him to believe that he may be trying to hide something. After Cook was delivered to the jail, the officer noticed Cook's underwear

8

was bunched up in the back, suggesting that he had been trying to remove something from his pants.

The district court properly instructed the jury regarding the elements of the crimes charged as well as on the State's burden of proof. In particular, the jury was instructed that its verdict must be founded entirely upon the evidence admitted and the law as given in the jury instructions. In addition, the district court instructed the jury that the arguments made by counsel were not evidence but were simply intended to help the jurors understand the evidence and apply the law. The district court also instructed the jurors that if they found any arguments of counsel not to be supported by the evidence, they should disregard those statements.

We presume that jurors follow the district court's instructions. *State v. Peppers*, 294 Kan. 377, 392, 276 P.3d 148 (2012). Here, the record suggests that the jurors did just that because they acquitted Cook of the aggravated weapons charge related to the brass knuckles. It appears that the jurors exercised discernment in recognizing that the brass knuckles were found wedged in an area behind the cushion in the backseat while the baggie of methamphetamine was found directly under where Cook had been sitting and fidgeting. Also notable is the fact that brass knuckles are more difficult to conceal in one's clothing than a small baggie containing methamphetamine.

Accordingly, it appears from the record that the jurors properly and fairly weighed the evidence presented at trial. In doing so, the jurors reasonably found that Cook was guilty of possession of methamphetamine beyond a reasonable doubt while acquitting him on the aggravated weapons charge. We find no indication that the prosecutor's arguments during the rebuttal portion of the closing arguments prejudiced Cook's right to a fair trial. Furthermore, we conclude that the State has proven beyond a reasonable doubt that any alleged prosecutorial error did not affect the outcome of the trial in light of the

9

entire record. In other words, we find there is no reasonable possibility that the alleged error contributed to the verdict.

*Exclusion of Evidence*

Cook argues the district court erred by excluding evidence regarding what he said to Officer Rapp after he found the baggie of methamphetamine in the backseat of the patrol car. During cross-examination, defense counsel asked Officer Rapp: "And Mr. Cook denied, that was his methamphetamine?" The State objected on the ground of hearsay, and the district court sustained the objection. When defense counsel argued that the evidence should come in as an excited utterance, the district court again sustained the objection.

A party being limited by the exclusion of evidence must sufficiently proffer the substance of the evidence to preserve the issue for appeal. K.S.A. 60-405; see also *State v. Hudgins*, 301 Kan. 629, 651, 346 P.3d 1062 (2015). Here, we can find no proffer of the evidence in the record. Nevertheless, because of the way defense counsel asked the question as well as the fact that Cook's defense was that the methamphetamine was not his, we assume that defense counsel believed that Officer Rapp would have testified that Cook denied the drugs were his immediately after they were discovered. Hence, we will examine the merits of Cook's argument.

We apply a multistep analysis when reviewing a district court's decision on the admission of evidence. First, we determine relevance. K.S.A. 60-401(b) defines relevant evidence as evidence that is probative and material. On appeal, we determine whether evidence is probative by using an abuse of discretion standard but we use a de novo standard to judge materiality. Second, we determine which rules of evidence or other legal principles apply. On appeal, we review the conclusion de novo. Third, the district court applies the applicable legal rule or principle. Our standard of review of the third

10

step depends on the rule or principle applied: some rules grant the district court discretion while other rules raise matters of law. *State v. Shadden*, 290 Kan. 803, 817-18, 235 P.3d 436 (2010).

Here, Cook argues that the district court erred in applying the rules of evidence. The rules involved are the hearsay rule as well as the excited utterance exception to the hearsay rule. The admission or exclusion of hearsay evidence is within the sound discretion of the district court. *State v. Seacat*, 303 Kan. 622, 634, 366 P.3d 208 (2016). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Hearsay is evidence of a statement made by someone other than by the witness testifying, offered to prove the truth of the matter asserted. K.S.A. 2018 Supp. 60-460. Generally, hearsay evidence is inadmissible unless it falls within a recognized exception. *Seacat*, 303 Kan. at 631. Assuming that the anticipated answer to defense counsel's question would have been hearsay, the issue before us is whether Officer Rapp should have been directed to answer the question under the excited utterance exception.

The excited utterance exception "allows a hearsay statement to be introduced to prove the truth of the matter when the statement was made under the stress of nervous excitement caused by such perception." *State v. Bryant*, 272 Kan. 1204, 1209, 38 P.3d 661 (2002). See K.S.A. 2018 Supp. 60-460(d)(2) (excited utterance excepted from general exclusion of hearsay evidence). In order to admit a statement meeting this exception, the proponent of the evidence must meet four requirements: (1) An event or condition occurred; (2) the event was startlingly sufficient to cause nervous excitement; (3) the declarant perceived the event; and (4) the declarant made the statement while under the stress of nervous excitement. *State v. Rowe*, 252 Kan. 243, 250, 843 P.2d 714

11

(1992) (citing Barbara, Kansas Evidence Objections with Evidentiary Foundations, § 7.6, p. 7-18 [1988]).

Here, Cook has failed to adequately support his argument that the excited utterance exception to the hearsay rule applies. Although Cook asserts that the evidence should be admitted under an excited utterance, he did nothing to preserve the record to show that the requirements of the exception had been met. With little or no evidence regarding Cook's reaction or demeanor at the moment the methamphetamine was discovered, we cannot find the district court abused its discretion in excluding the evidence as hearsay.

Even if the district court had abused its discretion, we find that any error would have been harmless. See *State v. Gilliland*, 294 Kan. 519, 542, 276 P.3d 165 (2012). In this case, the jury was well aware that Cook was denying that the baggie of methamphetamine belonged to him. Thus, there is no reason to believe that the exclusion of testimony had an effect on the outcome of the trial.

*Cumulative Error*

Cook also argues that the record reflects cumulative error worthy of reversing his conviction. Cumulative trial error requires a defendant to show multiple mistakes that individually would not require reversal but collectively undermined the defendant's ability to obtain a fair trial. See *State v. King*, 308 Kan. 16, 38, 417 P.3d 1073 (2018). A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

We have already found any error by the prosecutor or by the district court to have been harmless. As indicated above, a review of the record reveals that the district court appropriately instructed the jury regarding the law and the State's burden of proof.

Moreover, the record suggests that the jury appropriately considered the evidence and properly applied the law in reaching its verdict in this case. In fact, as noted above, the jurors exercised discernment in finding Cook guilty beyond a reasonable doubt of possession of methamphetamine while acquitting him of the aggravated weapons charge. Accordingly, Cook's ability to receive a fair trial was not undermined and his claim of cumulative error fails.

*Consecutive Sentences*

Finally, Cook contends that the district court erred in running his sentence in this case consecutive to his sentences in Case Nos. 16 CR 15, 16 CR 492, and 17 CR 1772. Of particular note, he argues that it is unclear whether the district court understood that no special sentencing rule applied that would necessitate running his sentence in this case consecutive to his sentence in Case No. 17 CR 1772. Although the district court certainly had the authority to order consecutive sentences, we agree with Cook that it was not required to do so.

Cook raises his argument regarding sentencing for the first time on appeal. Regardless, it involves a question of law. Specifically, Cook argues that the district court made an error of law when it improperly relied on certain special rules and imposed a consecutive sentence in this case. Interpretation of sentencing statutes, guidelines, and rules involves a question of law over which our review is unlimited. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018). Thus, we will address his argument on the merits.

Here, Cook was sentenced in four cases on the same day. In preliminary remarks at the sentencing hearing, the district court stated:

> "On two of these cases, the two 17 CR cases, Mr. Cook is presumed prison, the 17 CR 1922 by way of special rule and the 17 CR 1772 by way of the grid. There is a special rule in the two 16 CR cases triggered by special rule nine that would allow me to

13

order a prison sanction if and under these circumstances a defendant, in this case Mr. Cook, is actually presumed or presumptive probation."

After considering the parties arguments regarding disposition, the district court explained it was running the sentences in Case Nos. 16 CR 15 and 16 CR 492 concurrent with one another for a total of 27 months in prison. Then, the district court stated:

"In regard to all four of these—well, in regard to that sentence of the consolidated 16 CR cases relative to the two 17 CR cases, I am going to run them consecutive to each other. So I suppose if we're going by case numbers, 17 CR 1772 is consecutive to the two 16 CR cases and then 17 CR 1922 is consecutive to the 17 CR 1772 case and both 16 CR cases. I'm just saying that in maybe the more proper way, I believe. But the idea is that the two consolidated cases and the two 17 CR cases are consecutive to each other. Again, the two 16 CR cases are concurrent. So I believe that is 27, 19, and 30 months consecutive for a total of 76 months, if my math is correct."

Immediately following the above statements, the district court stated:

"There are special rules as stated in the PSIs. I think I've identified those. *I believe in each of these cases, including the consolidated 16 CR cases, there is a special rule that states the imposition of consecutive treatment of the cases*. So I am following that special rule. I am also applying the special rule that affects the presumption in 17 CR 1922.

"There is a motion to depart. The heading of the motion is for a durational departure, but [defense counsel] has clearly stated and I want the record to be clear that I have considered a durational departure and/or a dispositional departure as has been argued. I don't need [defense counsel] to file new motions to correct that. I considered his arguments orally as it pertains to the substantive statements in his motion.

"I am going to deny those motions. I am following the presumption in 17 CR 1772. I'm following the presumption in 17 CR 1922 that is both rule ten and rule 26, which is a subsequent felony drug possession. I'm also applying the special rule in the two 16 CR cases. I'm finding that there are no special and compelling factors or basis to depart.

14

"I believe that finding is required in the two 17 CR cases. But as [substitute counsel] has argued the same factors, to the degree it would apply, I am making a finding there's no basis to depart in the two 16 CR cases. I'm following the legislative directive in the two 17 CR cases and the special rule in the two 16 CR cases." (Emphasis added.)

Ultimately, the district court imposed a 19-month sentence in Case No. 17 CR 1772 to be served consecutive to the sentences in Case Nos. 16 CR 15 and 16 CR 492. Finally, the district court ordered Cook to serve 30 months in this case to be served consecutive to the sentences in the previous cases for a total controlling sentence of 76 months.

Cook argues that the district court erred in applying Special Rule 10—involving the imposition of consecutive sentences—because he was not on felony bond at the time he committed the crime in this case. See K.S.A. 2018 Supp. 21-6604(f)(4) ("When a new felony is committed while the offender is on release for a felony . . . a new sentence may be imposed consecutively . . . ."); see also K.S.A. 2018 Supp. 21-6606(d) ("Any person who is convicted and sentenced for a crime committed while on release for a felony . . . shall serve the sentence consecutively to the term or terms under which the person was released.").

A review of the record reveals that Cook's bond was modified to "own recognizance" in Case Nos. 16 CR 15 and 16 CR 492 on July 29, 2016. Subsequently, his bond was revoked in both cases on August 30, 2016. A warrant was issued in both cases on the same day. Another warrant was issued on September 23, 2016, after Cook failed to appear at his sentencing in those cases. It appears that Cook was being transported after he was arrested on those outstanding warrants when he committed the offense in which he was convicted in the present case.

Cook claims that because he was no longer on bond on November 21, 2016, when the crimes in this case allegedly occurred, the statutes requiring consecutive sentences do

15

not apply. Cook's bond had been revoked on August 30, 2016. Cook apparently takes issue with the language in K.S.A. 2018 Supp. 21-6604(f)(4) and K.S.A. 2018 Supp. 21-6606(d) that indicates it applies when the defendant commits a new crime "while on release for a felony" as inconsistent with the facts of this case, where the felony bond had been revoked. In support of his argument, he cites *State v. Voss*, 36 Kan. App. 2d 127, 131, 137 P.3d 1077 (2006).

In *Voss*, the defendant was on felony bond in Kentucky when he committed a new crime in Kansas. A panel of this court found that K.S.A. 2005 Supp. 21-4603d(f) did not apply where a defendant is on felony bond in another state. 36 Kan. App. 2d at 129-31. The panel noted that if the Kansas Legislature wished the statute to apply to out-of-state bonds, it is free to amend the statute. 36 Kan. App. 2d at 131. In response, the Legislature amended the statute in 2007 to include felony releases under "similar provisions of the laws of another jurisdiction." See K.S.A. 21-4603d(f)(3).

We find *Voss* to be distinguishable from the present case. Here, the statutory language does not state that it applies only when one is on felony bond. Rather, the statute applies "while the offender is on release for a felony pursuant to the provisions of article 28 of chapter 22 of the Kansas Statutes Annotated." See K.S.A. 2018 Supp. 21-6604(f)(4) and K.S.A. 2018 Supp. 21-6606(d). Just because Cook's bond had been revoked does not mean that he was not still on release at the time he committed the offense in this case. The fact that Cook was in violation of his conditions of release does not change this fact.

Cook further argues that the district court abused its discretion by running his sentence in this case consecutive to the sentence imposed for Case Nos. 16 CR 15 and 16 CR 492 because doing so was not statutorily required. Cook contends the mandate provided in K.S.A. 2018 Supp. 21-6606(d) conflicts with K.S.A. 2018 Supp. 21-6604(f)(4). He acknowledges that both statutes address the situation of an offender who

commits a crime while on felony bond, but he claims that K.S.A. 2018 Supp. 21-6604(f)(4) does not require consecutive sentences, but rather gives the district court discretion. Cook further contends that in the event of a conflict between the statutes, the district court should have the discretion to impose concurrent sentences.

A panel of this court recently rejected a similar argument in *State v. Al-Bureni*, No. 119,274, 2019 WL 985979, at *3-4 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* April 1, 2019. In that case, despite the information on the PSI report showing that the special rule applied, the district court ordered the sentence in the case to run concurrent to a previous sentence. The State appealed, and the defendant made a similar argument that consecutive sentencing under Special Rule 10—as set forth in K.S.A. 2017 Supp. 21-6606(d)—was discretionary. *Al-Bureni* focused on the conflict between the permissive language in K.S.A. 2017 Supp. 21-6604(f)(4) and the mandatory language in K.S.A. 2017 Supp. 21-6606(d). The State asserted that the word "may" in K.S.A. 2017 Supp. 21-6604(f)(4) refers to the district court imposing a prison sentence instead of a nonprison sentence, not whether the court may impose consecutive or concurrent sentences. The panel acknowledged the apparent conflict and stated:

> "Regardless, even if the language refers to whether the court decides to impose consecutive or concurrent sentences, we do not find that the permissive word 'may' necessarily conflicts with the mandate in K.S.A. 2017 Supp. 21-6606(d). The language in K.S.A. 2017 Supp. 21-6604(f)(4) is more broad and includes those defendants who committed a crime while on release for a felony under the laws of another jurisdiction while K.S.A. 2017 Supp. 21-6606(d) specifically refers only to the Kansas statutes. Thus, we do not find that the language provided in K.S.A. 2017 Supp. 21-6606(d) and K.S.A. 2017 Supp. 21-6604(f)(4) conflicts." 2019 WL 985979, at *3.

Further, the court concluded:

> "K.S.A. 2017 Supp. 21-6606(c), (d), and (e) describe circumstances under which the district court must impose consecutive sentences, and subsection (d) mandates that the

court impose consecutive sentences when a defendant is convicted and sentenced for a crime 'while on release for a felony pursuant to article 28 of chapter 22 of the Kansas Statutes Annotated.' The Kansas Legislature plainly designated when the district court has discretion to impose concurrent sentences and when, as shown in subsection (c) through (e), the district court does not have discretion and must impose consecutive sentences." 2019 WL 985979, at *4.

The statutory language at issue here is identical to that in *Al-Bureni*. Although we recognize that *Al-Bureni* is not binding authority, we do find its legal analysis and conclusion to be persuasive. Accordingly, we find that the Kansas Legislature plainly designated when the district court has discretion to impose concurrent sentences and when the district court does not have discretion and must impose consecutive sentences. As such, we conclude that the district court properly followed the legislative mandate in K.S.A. 2018 Supp. 21-6606(d) when it imposed consecutive sentences.

Finally, Cook argues the district court erred in running his sentence in this case consecutive to Case No. 17 CR 1772 pursuant to a special rule because no special rule applies. The State appears to concede that it is unclear from the record whether the district court understood that it was not required to run Cook's sentence in this case consecutive to Case No. 17 CR 1772. Unfortunately, the record suggests that the district court made a misstatement in sentencing Cook. In particular, the district court stated that "in each of these cases, including the consolidated 16 CR cases, there is a special rule that states the imposition of consecutive treatment of the cases." The parties agree that a special rule did not mandate his sentence in this case run consecutive to his sentence in Case No. 17 CR 1772.

Because the district court mistakenly stated that a special rule applies "in each of these cases" that required the imposition of consecutive sentences, we find that it is appropriate to vacate the sentence in this case and to remand this case for resentencing. Although it is possible that the district court was simply exercising its discretion in

18

imposing a consecutive sentence in this case, this is not clear from the record. See *State v. Edwards*, 252 Kan. 860, 868-70, 852 P.2d 98 (1993) (remanded for resentencing because district court mistakenly believed that the imposition of consecutive sentences was mandatory). Therefore, out of an abundance of caution, we vacate Cook's sentence and remand this case for resentencing to ensure that the district court understands that it has the discretion to run Cook's sentence in this case either concurrent or consecutive to the sentence in Case No. 17 CR 1772.

Conviction affirmed, sentence vacated, and case remanded for resentencing.

\* \* \*

MALONE, J., concurring and dissenting: I agree with the analysis and the result of the majority opinion except on whether K.S.A. 2018 Supp. 21-6606(d) mandates that Shay D. Cook's sentence in 17 CR 1922 run consecutive to his sentences in 16 CR 15 and 16 CR 492. On that issue, I find merit in Cook's claim that the mandate provided in K.S.A. 2018 Supp. 21-6606(d) conflicts with the more permissive language in K.S.A. 2018 Supp. 21-6604(f)(4). As a result, I agree with Cook that the district court was not statutorily required to impose consecutive sentences even though Cook committed his new crime after he had been released on a felony bond in the prior cases.

Resolution of this issue involves statutory construction. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

19

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Barlow*, 303 Kan. at 813. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. 303 Kan. at 813.

Cook claims the mandate provided in K.S.A. 2018 Supp. 21-6606(d) conflicts with the more permissive language in K.S.A. 2018 Supp. 21-6604(f)(4). K.S.A. 2018 Supp. 21-6606(d) states:

> "Any person who is convicted and sentenced for a crime committed while on release for a felony pursuant to article 28 of chapter 22 of the Kansas Statutes Annotated, and amendments thereto, *shall* serve the sentence consecutively to the term or terms under which the person was released." (Emphasis added.)

K.S.A. 2018 Supp. 21-6604(f)(4) states:

> "When a new felony is committed while the offender is on release for a felony pursuant to the provisions of article 28 of chapter 22 of the Kansas Statutes Annotated, and amendments thereto, or similar provisions of the laws of another jurisdiction, a new sentence *may* be imposed consecutively pursuant to the provisions of K.S.A. 2018 Supp. 21-6606, and amendments thereto, and the court may sentence the offender to imprisonment for the new conviction, even when the new crime of conviction otherwise presumes a nonprison sentence. In this event, imposition of a prison sentence for the new crime does not constitute a departure." (Emphasis added.)

Cook is correct that K.S.A. 2018 Supp. 21-6606(d) requires the district court to impose consecutive sentences when a defendant commits a new crime while on release on a Kansas felony bond, while K.S.A. 2018 Supp. 21-6604(f)(4) only permits the district court to impose consecutive sentences in the same situation. K.S.A. 2018 Supp. 21-6604

20

governs authorized dispositions for crimes committed on or after July 1, 1993, while K.S.A. 2018 Supp. 21-6606 governs multiple sentences in separate cases, and there are many sentencing provisions in the two statutes that overlap. But the only subsections in the two statutes that appear to conflict are the provisions addressing sentencing a defendant for a new crime committed while on felony bond. For instance, both statutes also address sentencing a defendant for a new crime committed while on felony probation, but there is no conflict between the two statutes on this sentencing provision. K.S.A. 2018 Supp. 21-6606(c) states:

"Any person who is convicted and sentenced for a crime committed while on probation, assigned to a community correctional services program, on parole, on conditional release or on postrelease supervision for a felony *shall* serve the sentence consecutively to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release." (Emphasis added.)

K.S.A. 2018 Supp. 21-6604(f)(1) states:

"When a new felony is committed while the offender is incarcerated and serving a sentence for a felony, or while the offender is on probation, assignment to a community correctional services program, parole, conditional release or postrelease supervision for a felony, a new sentence *shall* be imposed consecutively pursuant to the provisions of K.S.A. 2018 Supp. 21-6606, and amendments thereto, and the court may sentence the offender to imprisonment for the new conviction, even when the new crime of conviction otherwise presumes a nonprison sentence. In this event, imposition of a prison sentence for the new crime does not constitute a departure." (Emphasis added.)

So in other words, when a defendant commits a new crime while on felony probation, both K.S.A. 2018 Supp. 21-6606(c) and K.S.A. 2018 Supp. 21-6604(f)(1) require the district court to impose consecutive sentences. But when a defendant commits a new crime after being released on a Kansas felony bond, K.S.A. 2018 Supp. 21-6606(d)

21

requires the district court to impose consecutive sentences while K.S.A. 2018 Supp. 21-6604(f)(4) only permits the district court to impose consecutive sentences. I agree with Cook that there is a conflict between the two statutes.

As the majority opinion notes, this court recently addressed the same claim in *State v. Al-Bureni*, No. 119,274, 2019 WL 985979 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* April 1, 2019. In that case, the defendant contended that the mandatory language of K.S.A. 2017 Supp. 21-6606(d) conflicted with the permissive language of K.S.A. 2017 Supp. 21-6604(f)(4). He argued that K.S.A. 2017 Supp. 21-6604(f)(4) provided the district court with discretion when deciding to impose concurrent or consecutive sentences when the defendant committed a new crime while released on a felony bond. The *Al-Bureni* court rejected the asserted conflict, holding:

> "[E]ven if the language refers to whether the court decides to impose consecutive or concurrent sentences, we do not find that the permissive word 'may' necessarily conflicts with the mandate in K.S.A. 2017 Supp. 21-6606(d). The language in K.S.A. 2017 Supp. 21-6604(f)(4) is more broad and includes those defendants who committed a crime while on release for a felony under the laws of another jurisdiction while K.S.A. 2017 Supp. 21-6606(d) specifically refers only to the Kansas statutes. Thus, we do not find that the language provided in K.S.A. 2017 Supp. 21-6606(d) and K.S.A. 2017 Supp. 21-6604(f)(4) conflicts." 2019 WL 985979, at *3.

I am unpersuaded by the court's reasoning in *Al-Bureni*. Granted, K.S.A. 2018 Supp. 21-6604(f)(4) is broader in application than K.S.A. 2018 Supp. 21-6606(d) because it applies to defendants who commit a crime after being released on a felony bond from any jurisdiction, while K.S.A. 2018 Supp. 21-6606(d) only applies to defendants who commit a crime after being released on a felony bond under the laws of the state of Kansas. But this distinction does not resolve the conflict between the two statutes about whether the sentences must be consecutive. The two statutes overlap with respect to defendants who commit a crime after being released on a felony bond under the laws of

22

the state of Kansas. K.S.A. 2018 Supp. 21-6606(d) requires the district court to impose consecutive sentences in this situation, while K.S.A. 2018 Supp. 21-6604(f)(4) gives the district court discretion on whether to impose concurrent or consecutive sentences.

Because the conflict creates ambiguity in the statutes, we may examine legislative history to learn why there is different language in the two statutes. In *State v. Voss*, 36 Kan. App. 2d 127, 137 P.3d 1077 (2006), the defendant was on felony bond in Kentucky when he committed a new crime in Kansas. The district court applied K.S.A. 2005 Supp. 21-4603d(f), predecessor to K.S.A. 2018 Supp. 21-6604(f)(4), and sentenced the defendant to imprisonment even though his new crime was presumptive probation. But because K.S.A. 2005 Supp. 21-4603d(f) restricted its application to a situation when "the offender is on release for a felony pursuant to the provisions of article 28 of chapter 22 of the Kansas Statutes Annotated," this court found that the statute did not apply when the defendant was on felony bond in Kentucky. 36 Kan. App. 2d at 129. This court noted that if the Legislature wanted the statute to apply to out-of-state bonds, it was free to amend the statute. 36 Kan. App. 2d at 131.

The very next year, the Kansas Legislature amended K.S.A. 21-4603d(f) to provide that when a defendant commits a new felony while "on release for a felony pursuant to the provisions of article 28 of chapter 22 of the Kansas Statutes Annotated, *or similar provisions of the laws of another jurisdiction*," the district court may impose consecutive sentences or sentence the defendant to imprisonment even though the new crime is presumptive imprisonment. (Emphasis added.) L. 2007, ch. 198, § 4. But the Legislature did not include the additional language "or similar provisions of the laws of another jurisdiction" in K.S.A. 21-4608, predecessor to K.S.A. 2018 Supp. 21-6606(d).

So this legislative history explains why K.S.A. 2018 Supp. 21-6604(f)(4) has the additional language "or similar provisions of the laws of another jurisdiction." But it does not resolve the conflict caused because K.S.A. 2018 Supp. 21-6606(d) requires the

23

district court to impose consecutive sentences when a defendant commits a crime after being released on a Kansas felony bond, while K.S.A. 2018 Supp. 21-6604(f)(4) gives the district court discretion in this situation to impose either concurrent or consecutive sentences. I do not know why the Kansas Legislature has chosen to say one thing in K.S.A. 2018 Supp. 21-6606(d) and chosen to say something else in K.S.A. 2018 Supp. 21-6604(f)(4). But under the rule of lenity, we must resolve this conflict in favor of the accused. See *State v. Horn*, 288 Kan. 690, 693, 206 P.3d 526 (2009) ("Where the legislature fails to manifest a clear legislative intent by permitting the existence of conflicting statutory provisions, the rule of lenity must be considered.").

As a final point, I would note that the Kansas Sentencing Commission agrees with this interpretation of the conflicting statutes. See Kansas Sentencing Guidelines Desk Reference Manual (2018). In discussing special rule number 10 for crimes committed while the offender is on release for a felony bond, the sentencing commission notes the conflict between the language in K.S.A. 2018 Supp. 21-6606(d) and K.S.A. 2018 Supp. 21-6604(f)(4). Desk Reference Manual, pp. 54-55. The sentencing commission concludes by stating that "[b]ecause of this conflict, a court imposing a consecutive sentence should clarify that consecutive sentencing was done in the exercise of discretion, not because it was mandated." Desk Reference Manual, p. 55.

To sum up, under the conflicting statutes, when a defendant commits a new crime after being released on a felony bond, the district court may impose either concurrent or consecutive sentences. Cook committed his new crime in 17 CR 1922 while on felony bond in 16 CR 15 and 16 CR 492. In this situation, the district court could impose either concurrent or consecutive sentences. The district court misunderstood its statutory sentencing authority when it believed it was required by law to run the sentences consecutive. I would vacate the sentence in 17 CR 1922 and remand for resentencing for this reason, as well as for the reason stated in the majority opinion.

24