NOT DESIGNATED FOR PUBLICATION

No. 125,945

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGEL J. NOVAK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Seward District Court; CLINTON B. PETERSON, judge. Submitted without oral argument. Opinion filed June 28, 2024. Affirmed in part and dismissed in part.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

No appearance by appellee.


Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.


PER CURIAM: Angel Novak appeals from his conviction and sentence for electronic solicitation following his plea of no contest. Novak claims that he was denied a fair sentencing hearing because of prosecutorial error. First, he argues that the factual basis proffered by the State for his no-contest plea did not satisfy the elements of electronic solicitation. Second, he argues the prosecutor erred by arguing that Novak committed acts beyond those described in the factual basis for his plea. Third, he argues the prosecutor mischaracterized the psychological evaluation of Novak's recidivism risk.

1

Ultimately, none of these arguments lead to reversal. While Novak challenges the factual basis for his plea on appeal, he did not file a motion to withdraw his plea in district court, and his no-contest plea eliminates appellate jurisdiction over any claim that the factual basis for his plea was insufficient. Similarly, Novak did not preserve the second argument because he did not move to withdraw his plea and he failed to contemporaneously object to the prosecutor's questions about those acts on cross-examination. Even if Novak had preserved these arguments, the first does not rise to the level of manifest injustice required to reverse, and the second fails because the prosecutor had an evidentiary basis for the argument. Finally, the prosecutor's characterization of the language used in the evaluation does not merit reversal. Even though the prosecutor did not recite the exact language used in the evaluation, Novak was not denied a fair hearing.

FACTUAL AND PROCEDURAL HISTORY

In August 2021, the State charged Novak with one count of electronic solicitation under K.S.A. 21-5509, a severity level 1 person felony, having occurred on or about May 1, 2021, and June 30, 2021. Novak entered a plea of no contest without reaching a deal with the State. At the plea hearing, the State proffered the factual basis for Novak's conviction. According to the State,

> "if this matter went to trial the evidence would show that during the month of March 2021 the Defendant, who is 23 years old, sent nude pictures of himself to JGT a child of 13 years of age. At the time, the child informed the Defendant that she was only in 7th grade and she was 13 years of age at Eisenhower School. They had no further contact after that. Then [from] May of 2021 through June of 2021 on three different occasions the Defendant again sent nude pictures of himself showing his upper and lower body exposed including his penis and various comments to JGT after knowing that she was 13 years of age. He sent these photos from his locations in Seward County, Kansas to her locations in Seward County, Kansas . . . and these all were sent on phones or electronic devices."

2

Following the plea hearing, Novak moved for both a dispositional and a durational departure. Instead of the standard sentence of 155 months in prison, Novak proposed a probation term of 5 years. While on probation, he would complete a sex offender treatment program, continue mental health counseling, submit to random drug testing, refrain from using social media, pay restitution to the victim for mental health counseling, and not work for any business whose primary purpose is to provide services to children under 18 years of age. In support of his motion, Novak pointed to his lack of criminal history, his clouded judgment at the time of the crime due to depression and anxiety, the less than typical harm caused by his crime, and his close family relationships that could aid in his rehabilitation.

If the district court denied his request for probation, Novak alternatively requested a downward departure for his prison term. Along with the factors relied on in his dispositional departure motion, Novak also pointed out that if his conduct had occurred in person rather than online, he would have been charged with the lesser offense of aggravated indecent solicitation of a child under K.S.A. 21-5508(b), a severity level 5 person felony. Due to the slight difference between the offenses, Novak asked the district court to sentence him as if he had committed the lesser offense of aggravated indecent solicitation.

Prior to sentencing, Novak was evaluated by a licensed clinical psychotherapist, who administered several tests. The evaluation indicated that Novak has sexual interest in females aged 14-17 and in adult females, although the psychotherapist noted that some attraction to postpubescent adolescents is normal for adult males, so long as they refrain from acting on it. Additionally, the evaluation found that Novak is likely preoccupied with sex and has a history of excessive use of pornography, including violent pornography but not child pornography.

The evaluation suggested that Novak was presenting himself overly favorably, was defensive or even lying about his sexual behavior, lacked guilt for his behavior, and was low on empathy. Two of the tests placed Novak in the low risk category for reoffending, a third test placed him in the low-moderate risk category for reoffending, and a fourth test placed him in the medium risk group for reoffending. Based on these results, the psychotherapist recommended that Novak continue living in the community, so long as he participates in a sex offender treatment program, takes medication for his mental disorders, refrains from contacting the victim and her family, is supervised when around children under the age of 18, and is restricted from accessing social media.

To support his departure motion, Novak testified at his sentencing hearing. He admitted to sending nude pictures and sexually explicit messages to J.G.T. via Snapchat. At the time, Novak was working as a computer technician at a middle school. He claimed that J.G.T. initiated the correspondence by adding him on Snapchat and flirting with him. According to Novak, he did not know who was messaging him at first. When he asked who was messaging him, J.G.T. identified herself as a 13-year-old student at the same middle school where Novak worked. Novak claimed that he then stopped communicating with her until a few weeks later when she contacted him again via Snapchat. He continued the conversation, and the two discussed sexual topics, including various sexual positions they could engage in. He even asked her to sneak out of the house so that they could meet each other in person. Novak claimed that the two also exchanged pictures—he sent at least three nude pictures of himself and she sent a picture of herself in a swimsuit.

Eventually their conversations ceased. Novak claimed that he later received messages from J.G.T.'s father telling him to stop contacting her. Shortly after, he was brought into custody by law enforcement and admitted to the conduct described above.

Novak attributed his behavior to his unhealthy mental state at the time. He stated that he abused drugs and alcohol and sought validation from women online to cope with his anxiety and depression. Novak claimed that his arrest motivated him to improve his mental health. While out of jail on supervised bond, he quit drugs and alcohol, changed his friend group, cut down on social media, received counseling and medication for his anxiety and depression, and applied to a sex offender treatment program. He also secured employment during this time, working a handful of jobs where he had no contact with children.

At sentencing, Novak expressed remorse for his actions and apologized to J.G.T. and her family. He asked the district court to place him in a sex offender treatment program and allow him to reimburse J.G.T.'s family for any mental health counseling she may need.

Further witnesses at the sentencing hearing included Novak's psychiatrist, his current and former coworkers, his pastor, and his mother. Novak's psychiatrist explained that Novak was diagnosed with adjustment disorders of depression and anxiety, likely triggered by his arrest, and is taking an antidepressant under her orders. Novak's coworkers testified that he was hardworking, punctual, and collegial. Novak's pastor testified that his congregation consists almost entirely of people over the age of 50 so, if Novak received probation, he would be able to worship there without interacting with children. Finally, Novak's mother testified that he is a standup individual, accountable, and responsible.

Arguing against the departure motion, the State pointed to the progressive nature of Novak's conduct, which escalated from working at the school the victim attended, to contacting her on social media, sending nude photos, discussing sexual acts, and finally asking her to sneak out of her parents' house. The State added that the psychological evaluation did not state that Novak's conduct was an aberration, but it placed him at a

5

moderate risk of reoffending. The State also expressed concern with Novak's continued use of social media, even if he has decreased his presence online.

The district court ultimately denied Novak's departure motion. The district court began by noting that, according to the Kansas Sentencing Guidelines, Novak's presumptive sentence would be 155 months in prison and any deviation from the presumptive sentence would only be appropriate if substantial and compelling reasons, based on clear and convincing evidence, supported a downward departure. The district court then stated that Novak's professed remorse was unconvincing. It based this finding on (1) the psychological evaluation's finding that Novak presented an overly favorable image of himself and appeared to lack guilt, and (2) Novak's testimony at sentencing, where he claimed that he was joking when he asked the victim to sneak out of her house. The district court also noted that electronic solicitation warrants a more severe penalty than in-person solicitation because electronic solicitation can happen anytime, anywhere, and includes the sharing of lewd photographs.

Having ruled on Novak's departure motion, the district court went on to sentence Novak to the mitigated prison term of 147 months and a postrelease supervision period of 36 months. Novak timely appeals his conviction and sentence.

ANALYSIS

While Novak frames his appeal as a prosecutorial error challenge, his first argument attacks his conviction by arguing that the evidence the State proffered at the plea hearing does not satisfy the elements of electronic solicitation. He then asserts two prosecutorial error claims. The first claim is that, on cross-examination, the prosecutor questioned Novak about conduct beyond what the State proffered the evidence would show at the plea hearing. He then claims that the prosecutor mischaracterized the psychological evaluation's findings.

*We question jurisdiction where Novak did not file a motion to withdraw his no-contest plea, did not make any contemporaneous objections, and the district court imposed a presumptive sentence.*

Whether jurisdiction exists over an appeal is a question of law over which this court's scope of review is unlimited. *State v. Lundberg*, 310 Kan. 165, 170, 445 P.3d 1113 (2019). If appellate jurisdiction does not exist, Novak's appeal must be dismissed. See *State v. Phinney*, 280 Kan. 394, 398-99, 122 P.3d 356 (2005).

Novak did not at any time file a motion to withdraw his plea in the district court. Nor did he make a contemporaneous objection to the State's factual basis for his no-contest plea. At the sentencing hearing, Novak also failed to object to the prosecutor's questions on cross-examination about his conduct that went beyond transmitting nude photographs. Significantly, he failed to object to the prosecutor's recitation of the licensed clinical psychotherapist's conclusions during closing arguments. In addition, Novak received a sentence in the presumptive range.

Under K.S.A. 22-3602(a), "[n]o appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except . . . as provided in K.S.A. 60-1507, and amendments thereto." Thus, when a defendant pleads guilty or no contest and then does not withdraw his or her plea at the district court, an appellate court does not have jurisdiction to review the merits. *State v. Hall*, 292 Kan. 862, 867, 257 P.3d 263 (2011) (A "guilty plea without a subsequent motion to withdraw in the [district] court deprives us of appellate jurisdiction.").

In addition, because the district court imposed a presumptive prison sentence we are without jurisdiction to consider sentencing issues. Under K.S.A. 21-6820(c)(1)-(2):

> "(c) On appeal from a judgment of conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review:

7

"(1) Any sentence that is within the presumptive sentence for the crime; or

(2) any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

We note a defendant may argue to correct an illegal sentence at any time under K.S.A. 22-3504. However, K.S.A. 22-3504(c)(1) defines an illegal sentence as one that does not conform to applicable statutory provisions. Novak's claims that the proffer of evidence did not satisfy the elements of the offense and of prosecutorial error do not assert any illegal sentence arguments.

As for Novak's claims of prosecutorial error, generally appellate courts will review a prosecutorial error claim based on a prosecutor's comments made at trial during voir dire, opening statement, or closing argument, even without a timely objection. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021). This rule applies to both the guilt and penalty phases of the trial. *State v. Blevins*, 313 Kan. 413, 428, 437, 485 P.3d 1175 (2021).

In *State v. Wilson*, 309 Kan. 67, 73, 431 P.3d 841 (2018), the Kansas Supreme Court held prosecutorial error may occur during a sentencing proceeding before a judge. The court reasoned prosecutorial missteps may implicate due process rights to a fair trial in a nonjury context. Thus, it held the analytical framework from *State v. Sherman,* 305 Kan. 88, 378 P.3d 1060 (2016), applies in both the guilt and penalty phases of any trial. The *Wilson* court expressed no opinion as to whether a contemporaneous objection or other posthearing remedial motion is required to appeal a prosecutorial error claim arising from a nonjury setting, however.

Generally, contemporaneous objections must be made to questions posed by a prosecutor and responses to those questions to preserve the issue of prosecutorial error for appellate review. *State v. Lowery*, 308 Kan. 1183, 1195-96, 427 P.3d 865 (2018).

> "K.S.A. 60-404 requires a party to make a timely and specific objection at trial to preserve an evidentiary challenge for appellate review. The statute has the practical effect of confining a party's appellate arguments to the grounds presented to the district court. It also directs that a verdict 'shall not' be set aside, or a judgment reversed, based on the erroneous admission of evidence without a contemporaneous trial objection." *State v. Scheetz*, 318 Kan. 48, 49, 541 P.3d 79 (2024).

"A defendant may not evade the contemporaneous objection requirement demanded by K.S.A. 60-404 by asserting an evidentiary claim on appeal under the guise of prosecutorial error." *State v. George*, 311 Kan. 693, Syl. ¶ 2, 466 P.3d 469 (2020); see also *State v. Miller*, 293 Kan. 535, 550, 264 P.3d 461 (2011) (While a contemporaneous objection is required for review of an evidentiary prosecutorial error claim, it is unnecessary to consider prosecutorial error during closing argument.).

Novak argues that his appeal is not based on evidentiary claims by relying on *State v. Abbott*, No. 123,411, 2021 WL 6141105, at *2 (Kan. App. 2021) (unpublished opinion), *rev. denied* 316 Kan. 758 (2022). But *Abbott* is distinguishable from the present case. There, the State presented statements from the victims' parents at sentencing in response to the defendant's departure motion. The district court denied the departure motion, but on appeal, the case was remanded for reconsideration of the departure motion. At the second sentencing hearing, the State argued against the departure motion by referring to the victims' parents' statements. However, the parents did not provide updated statements at the second hearing, and their original statements from the first hearing were not offered into evidence. Despite failing to object, the defendant preserved his challenge to the prosecutor's argument at sentencing because the victims' parents' statements were not presented as evidence at the second hearing.

We find Novak's argument under *Abbott* unconvincing. Unlike *Abbott*, here the prosecutor's argument at sentencing that Novak had done more than just send nude

photographs to J.G.T. was supported by the evidence. The prosecutor questioned Novak on cross-examination about his conduct beyond sending nude photographs, and he admitted to that conduct.

Novak's first prosecutorial error claim is an evidentiary claim. Novak complains on appeal that, at the sentencing hearing, the prosecutor questioned him about conduct beyond what the State proffered the evidence would show. No specific contemporaneous objections were made to preserve the issue. Ordinarily, an appellant must preserve an issue in the court below to pursue it on appeal. Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous objection rule in some contexts upon finding the purpose for the rule has been satisfied. See, e.g., *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013); *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012). Due to the failure to preserve the evidentiary issue, however, we could decline to reach the merits of Novak's arguments.

Novak's second prosecutorial error claim challenges the prosecutor's characterization of the evaluation's conclusions during closing arguments at the sentencing hearing. Again, Novak did not object to the prosecutor's arguments. While we recognize we may reach the merits of a prosecutorial error claim on due process grounds despite a failure to object, due to the remedy Novak seeks we view his claim of prosecutorial error as a collateral attack on a presumptive sentence.

Here, the district court imposed a presumptive sentence. As a remedy for claimed prosecutorial error, without expressly moving to withdraw his plea, Novak asks us to "reverse and remand to the district court for resentencing," despite his presumptive sentence, which we cannot do. See K.S.A. 21-6820(c)(1); see also *State v. Huerta*, 291 Kan. 831, 835, 837, 247 P.3d 1043 (2011) (Appellate courts lack jurisdiction to review presumptive sentences "even if those appeals were based on claims of partiality, prejudice, oppression, or corrupt motive.").

*Novak claims the factual basis supporting his no-contest plea was inadequate, but he never moved to withdraw his plea.*

Novak argues that the factual basis proffered by the State in support of his no-contest plea did not satisfy the elements of electronic solicitation. On close review we find Novak's argument presents a challenge to the validity of his conviction. See *State v. Redstone*, No. 121,747, 2021 WL 936060, at *2-3 (Kan. App. 2021) (unpublished opinion) (finding appellate jurisdiction did not exist over any claim that factual basis for no-contest plea was insufficient).

A guilty or no-contest plea surrenders a criminal defendant's right to appeal his or her conviction but not his or her sentence. See K.S.A. 22-3602(a). Here, Novak's conviction arises directly from his no-contest plea, and his challenge goes to the factual basis for his no-contest plea. Under K.S.A. 22-3602(a), we lack jurisdiction to consider a direct appeal of a conviction that stems from a guilty or no-contest plea:

> "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-507, and amendments thereto."

Normally, a defendant would file a motion to withdraw the plea with the district court. If the motion is denied, the appellate court then has jurisdiction to consider whether the district court's denial of the motion was erroneous. See *State v. Smith*, 311 Kan. 109, 122, 456 P.3d 1004 (2020). Novak did not attempt to withdraw his no-contest plea in the district court, and he does not bring a K.S.A. 60-1507 motion.

This court lacks jurisdiction to consider Novak's challenge of the factual basis for his plea on direct appeal. See *State v. Graham*, No. 118,691, 2019 WL 1412594, at *5

11

(Kan. App.) (unpublished opinion) ("Regardless of how Graham frames the issue on appeal, he is attempting to appeal his convictions following a guilty plea. Under K.S.A. 2018 Supp. 22-3602[a], we lack jurisdiction over this direct appeal, so we must dismiss."), *rev. denied* 310 Kan. 1066 (2019). We conclude that under K.S.A. 22-3602(a), we have no jurisdiction to consider a direct appeal of the conviction that stems from Novak's no-contest plea. Without jurisdiction over this claim of error, we must dismiss.

Even if appellate jurisdiction did exist to review this issue, Novak could not demonstrate any error. We first consider what is required to establish the factual basis for Novak's plea. K.S.A. 22-3210 states in relevant part:

> "(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:
>
> (1) The defendant or counsel for the defendant enters such plea in open court; and
>
> (2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and
>
> (3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and
>
> (4) *the court is satisfied that there is a factual basis for the plea*." (Emphasis added.)

K.S.A. 22-3210(a)(4) requires a trial court to establish all elements of the crime charged are present before accepting a defendant's plea. *State v. Shaw*, 259 Kan. 3, 7, 910 P.2d 809 (1996). In no-contest plea cases, a factual basis for a plea may be satisfied: (1) by a complaint or information given or read to the defendant which sets forth the factual details and essential elements of the particular crime charged; (2) by the prosecutor or defendant's factual statement presented to the court at the plea hearing; or (3) based on

12

the evidence presented at a preliminary hearing at which the same judge presided. *State v. Ebaben*, 294 Kan. 807, 813, 281 P.3d 129 (2012) (citing *Shaw*, 259 Kan. at 10-11).

To demonstrate that Novak committed electronic solicitation, the essential elements the State had to show were: (1) Novak enticed or solicited (2) by means of communication conducted through the telephone, internet, or by other electronic means (3) a person he believed to be a child under 14 years of age (4) to commit or submit to an unlawful sexual act. See K.S.A. 21-5509. Novak contends that the factual basis for his no-contest plea failed to specify the unlawful sexual act that he solicited J.G.T. to submit to.

K.S.A. 21-5501(d) defines an "'unlawful sexual act'" as "any rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy, aggravated criminal sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery, as defined [under Kansas law]." The factual basis for Novak's no-contest plea does not address any of these unlawful sexual acts. The factual basis only states that the evidence at trial would show that Novak used electronic means of communication to send nude photographs of himself to a child he believed was 13 years old. There is no mention of Novak soliciting J.G.T. to submit to one of the unlawful sexual acts described by K.S.A. 21-5501(d).

The mere act of transmitting nude photographs does not satisfy any of the unlawful sexual acts described by K.S.A. 21-5501(d). As defined by Kansas law, rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy, aggravated criminal sodomy, sexual battery, and aggravated sexual battery each requires either some physical contact, or the solicitation of physical contact, between the defendant and the victim. K.S.A. 21-5503; K.S.A. 21-5504; K.S.A. 21-5505; K.S.A. 21-5506. Lewd and lascivious behavior requires a physical proximity between the defendant and victim, which is not satisfied by the digital transmission of a photograph. See *State v.*

13

*Scheetz*, 63 Kan. App. 2d 1, 12-13, 524 P.3d 424 (2023), *overruled on other grounds by State v. Scheetz*, 318 Kan. 48, 541 P.3d 79 (2024).

Novak is not entitled to relief, however. Under K.S.A. 22-3210(d)(2), Kansas courts may set aside a conviction and allow a defendant to withdraw a no-contest plea after sentencing to correct manifest injustice. Kansas courts have defined "'manifest injustice'" to mean "'obviously unfair'" or "'shocking to the conscience.'" *White v. State*, 308 Kan. 491, 496, 421 P.3d 718 (2018). No such injustice is present here. And, as discussed, Novak did not move the district court to withdraw his no-contest plea.

It is clear from a review of the record of the sentencing hearing that Novak's conduct went beyond the mere transmission of photographs. Novak and J.G.T. discussed sexual positions they could engage in, and he even asked her to sneak out of the house so that they could meet each other in person. By taking steps to entice J.G.T. to meet him in person and engage in sexual activity, Novak solicited J.G.T. to submit to an unlawful physical sexual act. This conduct reveals that Novak contemplated physical sexual contact or, at the very least, physical proximity of a sexual nature with J.G.T. Had the State reiterated these facts at the plea hearing, the factual basis for Novak's no-contest plea would have clearly satisfied the last element of electronic solicitation. Thus, if appellate jurisdiction existed, we are convinced Novak's argument concerning an insufficient factual basis for his plea would fail.

In sum, we conclude under K.S.A. 22-3602(a), this court has no jurisdiction to consider Novak's challenge of the factual basis for his no-contest plea on direct appeal. This portion of Novak's appeal is dismissed for lack of jurisdiction.

*Novak claims the prosecutor committed error by arguing against his departure motion by asserting he committed acts beyond those described in the factual basis, but supporting evidence was presented at the sentencing hearing.*

We turn next to Novak's first claim of prosecutorial error. As explained above, Novak did not move to withdraw his no-contest plea, but he now asks this court to reverse and remand for resentencing when a presumptive sentence was imposed. Novak appears to make a collateral attack on his conviction and sentence. Again, we note Novak failed to make any specific contemporaneous objections at the sentencing hearing. For these reasons, we do not believe Novak has properly preserved this claim of error for appellate review. See K.S.A. 22-3602(a); K.S.A. 21-6820(c)(1) and (2); K.S.A. 60-404. Nevertheless, for purposes of judicial economy, we will address his claim.

Novak claims the prosecutor erroneously argued against his departure motion at sentencing by relying on facts not in evidence. Novak argues the State's proffer of evidence alone failed to show that he progressed from the mere transmission of photographs to discussing sexual acts with J.G.T. and suggesting she should sneak out of her parents' house and meet him in person.

When evaluating a claim of prosecutorial error during the sentencing phase of proceedings, "the analytical framework from *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), applies in both the guilt and penalty phases of any trial—whether before a jury or judge." *Wilson*, 309 Kan. at 68; see also *Blevins*, 313 Kan. at 437 (addressing prosecutorial error claim related to prosecutor's comments during sentencing phase of trial).

Under *Sherman*, the appellate court uses a two-step process to evaluate claims of prosecutorial error.

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

See *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021).

As for Novak's first claim of prosecutorial error, the State did present evidence at sentencing that Novak discussed sexual acts with J.G.T. and asked her to sneak out and meet him. Novak's own testimony at the sentencing hearing revealed these facts. On direct examination, Novak admitted that he talked to J.G.T. about "what [him] and her would do" if they had the opportunity. On cross-examination, the prosecutor delved deeper into this statement.

"Q.     Okay. And also during the conversations you at one point discussed having sex with her, correct?

"A.     Yes, sir.

"Q.     Okay. You went so far as to discuss meeting and the types of positions of sex that you and her would have together, correct?

"A.     Yes, sir.

. . . .

"Q.     Now your eval. discusses that you don't seem particularly interested in just children even though you have some major sexual issues, correct?

"A.     Yes, sir.

16

"Q.	But the reality is the way you approach this is you didn't necessarily pick her just because she's a child but you would of taken her as a child and had sex with her or an adult, correct? You just wanted to have sex.

"A.	No, I would not. I would not have sex with a child.

"Q.	But you discussed it with her.

"A.	Yes, sir, I did.

"Q.	All the way down to physically how to do it.

"A.	Yes, sir.

. . . .

"Q.	At one point you told the detective that you asked [J.G.T.] to sneak out of the house and meet with you, correct?

"A.	I was—I was just messing around.—(unintelligible)—I do not really want her to sneak out of the house and meet with me.

"Q.	Well now that's what you told him during the interview that that was just a joke when you said it, correct?

"A.	Yes, sir.

"Q.	But you didn't tell [J.G.T.] it was a joke, you didn't say it was a joke, correct?

"A.	I don't remember the conversations fully but I know for a fact I did not mean for her to actually sneak out the house and meet with me.

"Q.	Did you mean to send nude pics to a 13 year old child?

"A.	It's not what I meant but it is what I did.

"Q.	And before you had those discussions of having sexual activity with her and having her sneak out of her house to meet with you, you had already told her previously that, hey we—we could maybe do that kind of stuff but we can't do that until you're much older, correct?

"A.	Yes.

"Q.	But then you turned right around and did everything you said you weren't going to do?

"A.	Yes, sir."

Through the cross-examination of Novak, the State presented evidence of his conduct that went beyond merely sending photographs. For this reason, Novak's case is distinguishable from the case he relied on in his brief, *Wilson*, 309 Kan. 67. There, the

17

Kansas Supreme Court held that the prosecutor committed reversible error by stating, without evidentiary support, that the defendant "digitally raped and sodomized his victim." 309 Kan. at 78. The prosecutor's statements in *Wilson* were solely supported by police reports, which were only allegations—not evidence. Here, the prosecutor's comments at Novak's sentencing hearing were supported by Novak's testimony.

In similar fashion, Novak mistakenly relies on *State v. Pulley*, No. 112,631, 2015 WL 5750477 (Kan. App. 2015) (unpublished opinion). In *Pulley*, the sentencing court denied the defendant's departure motion after citing details from the probable cause affidavit that were not supported by other evidence. A panel of this court concluded that error occurred as a product of the sentencing court's consideration of those extraneous facts, given that they were not established by either admission or trial and were not otherwise rooted in an evidentiary foundation. 2015 WL 5750477, at *6.

Again, Novak's case is distinguishable because the prosecutor's statements were supported by evidence. The prosecutor based his argument on conduct that Novak admitted to while testifying at his sentencing hearing. Therefore, the prosecutor did not err, as required by the first step of the *Sherman* test.

*The prosecutor's interpretation of the psychological evaluation is not grounds for reversal.*

Novak's second prosecutorial error claim is that the prosecutor mischaracterized the psychological evaluation's assessment of his recidivism risk and conclusions regarding probation. Again, we note Novak failed to make any specific contemporaneous objections at the sentencing hearing, and the remedy sought by Novak is unavailable, which leads us to question whether Novak has properly preserved his claim of prosecutorial error for appellate review. See K.S.A. 22-3602(a); K.S.A. 21-68-6820(c)(1) and (2); K.S.A. 60-404. Because Kansas appellate courts have found claims of

prosecutorial error arising out of alleged misstatements at a sentencing hearing reviewable, we address his claim.

While cross-examining Novak, the prosecutor asked Novak whether the evaluation placed Novak at a moderate risk of reoffending and did not recommend probation. Novak's response was that the evaluation placed him at low to moderate risk of reoffending and his psychotherapist said he would suggest probation. Then, in his closing argument, the prosecutor stated:

> "You would expect or hope in a—in a sex offender evaluation that the evaluator would say, woah, this is an aberration. I can't see the future but everything I got here is—this is an aberration. It can't possibly have any chance of happening again. That's not what the evaluator wrote. The evaluator [wrote] he was at moderate risk of reoffending."

The prosecutor was correct when he argued that the evaluation did not find that Novak's offense was an aberration that could never happen again. But the evaluation also did not state that Novak was at moderate risk of reoffending. The psychotherapist had administered four different recidivism risk assessments. One of these assessments placed Novak at medium risk for reoffending, another placed him at low-moderate risk, and two others placed Novak at low risk. The evaluation concluded "[t]here does not appear to be a [community] placement issue for Angel," however, the prosecutor did not mention this in his closing argument.

"Prosecutors enjoy wide latitude in crafting closing arguments." *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). Prosecutors may argue reasonable inferences drawn from the admitted evidence but may not argue facts that are not in evidence. *State v. Tahah*, 293 Kan. 267, 277, 262 P.3d 1045 (2011). Likewise, "[p]rosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law."

*State v. Baker*, 281 Kan. 997, 1016, 135 P.3d 1098 (2006). In short, a prosecutor's arguments must remain consistent with the evidence. *Pribble*, 304 Kan. at 832.

It appears the prosecutor selectively relied on the evidence that best supported his argument. He relied exclusively on the risk assessments that Novak scored the worst on, and he failed to use the exact language used in the evaluation when he argued that Novak was at "moderate" risk of reoffending instead of saying "medium" or "low-moderate risk." There is no question the prosecutor did not correctly quote the psychological evaluation and may have slanted the interpretation slightly as is to be expected in an adversarial system. We find the prosecutor's interpretation was not inconsistent with the evidence but for the substitution of the word "moderate" instead of "medium" or "low-moderate." However, this misstatement hardly seems designed to inflame the passions or prejudices of the sentencing judge or distract the judge from his duty to make decisions based on the evidence and controlling law.

Even if the prosecutor's description of Novak's recidivism risk exceeded the bounds of permissible conduct, it did not deny Novak a fair sentencing hearing. Kansas courts look at three factors when analyzing reversibility in prosecutorial error cases: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the fact-finder. *Pribble*, 304 Kan. at 833. None of these factors are present here.

Characterizing the risk assessment as "moderate" instead of "medium" or "low-moderate" is neither gross and flagrant misconduct, nor evidence of ill will on the prosecutor's part. The terms are practically synonymous and easy to mistake for one another. It is also likely that the prosecutor's word choice did not weigh heavily in the sentencing judge's mind. While denying Novak's departure motion, the sentencing judge stated that he read the evaluation and he even quoted directly from it when explaining his

20

reasons for denying the motion. Therefore, even if the prosecutor misquoted the evaluation's findings, Novak was not harmed because the district court relied on the source material rather than the prosecutor's characterization.

*Conclusion*

Novak's arguments on direct appeal are unpersuasive. First, we have no jurisdiction to consider Novak's attempt to undermine the factual basis for his no-contest plea on direct appeal, as it is barred by statute. Even if we were to reach the issue, any deficiency in the factual basis would not reach the level of manifest injustice because sufficient evidence in the record indicates Novak satisfied the elements of electronic solicitation. This portion of the appeal is dismissed.

Second, Novak's claim that the prosecutor erred by arguing that he committed acts beyond those described in the factual basis was not preserved. And even if he had preserved his claims of error, Novak's own testimony provided an evidentiary basis for the prosecutor's arguments.

Third, the prosecutor's interpretation of the psychological evaluation is almost entirely consistent with evidence. The only discrepancy between the evaluation and the closing argument was the use of the word "moderate" instead of the words "medium" or "low-moderate." Even if we were to consider this discrepancy a mischaracterization of the evidence, it is not worthy of reversal because it did not deny Novak a fair hearing. As a result, we affirm Novak's sentence.

Affirmed in part and dismissed in part.